[Civ. No. 17715. First Dist., Div. One. Jan. 29, 1958.]

ROY FELLOM, JR., et al., Appellants, v. REDEVELOP-
MENT AGENCY OF THE CITY AND COUNTY OF
SAN FRANCISCO et al., Respondents.

Neal A. Fellom, in pro. per., for Appellants.

Aaron M. Sargent, as Amicus Curiae on behalf of Appellants.

Dion R. Holm, City Attorney, Morley Goldberg and George E. Baglin, Deputy City Attorneys, for Respondents.

McMURRAY, J. pro tem.*—This is an appeal by plaintiffs from a judgment after order sustaining defendants' demurrer to plaintiffs' complaint without leave to amend.

Appellants are the owners of three separate vacant and unimproved parcels of land in the Diamond Heights District in San Francisco. Respondent Redevelopment Agency has designated Diamond Heights a blighted area and approved it for redevelopment under the Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.), with approval for redevelopment by the Board of Supervisors of the City and County of San Francisco having been determined before the commencement of this action. Appellants filed an action in the San Francisco Superior Court seeking to enjoin the redevelopment agency from proceeding in eminent domain against their property. The complaint alleges that they made application to the agency to allow them to participate in the redevelopment of their property in conformance with the master plan, and in accordance with the provisions of the California Community Redevelopment Law, but that the agency refuses to allow the plaintiffs their right to participate; that this refusal on the part of the agency to allow the plaintiffs to participate is a violation of the due process and equal protection clauses of the Fourteenth Amendment of the Constitution of the United States and the Constitution of the State of California. The complaint also alleges that the agency denies participation to the majority of the owners

---

*Assigned by Chairman of Judicial Council.

of land in Diamond Heights, about 90 per cent of the total privately owned acreage in the area having been refused participation rights; that participation has been denied to about 97 per cent of the total privately owned, unimproved property, by acreage, while eligibility to participate has been granted to the owners of approximately 75 per cent of the improved property, by acreage, within the area. The complaint further alleges that the agency has stated that the reason for denying participation to plaintiffs' lots is that changes in lot lines and grades are necessary, but that these reasons have not been equally applied to all other properties equally situated and where similar lot line changes and grading are necessary; ''[t]hat there is no reasonable basis for this discrimination as plaintiffs' unimproved lots meet all of the minimum qualifications for participation as stated in the Master Plan for Diamond Heights as to area, location, dimensions, use and frontage.'' The complaint further alleges that the agency has a vested interest in seeing that owner participation is denied in that redevelopment and administrative costs will be self-liquidating from the proceeds of resale on property acquired by eminent domain, and that for this reason it is impossible for the agency to exercise an impartial discretion in granting owner participation. In the second cause of action appellants' complaint alleges that Diamond Heights is not a blighted area within the meaning of the California Community Redevelopment Law. The plaintiffs pray for an order directing the agency to grant eligibility for participation to their property in the redevelopment of their property in conformance with the master plan, and/or for an injunction permanently restraining and enjoining the defendants from condemning or otherwise proceeding against the said property of the plaintiffs by eminent domain; (2) for an order directing the defendants to appear and show cause why a temporary restraining order or preliminary injunction should not issue restraining the agency from condemning or otherwise proceeding against plaintiffs' property during pendency of this action; and (3) for such general and special damages as hereafter ascertained and proved. A general demurrer to this complaint was sustained without leave to amend and the appellants appeal from the judgment entered thereon.

The Community Redevelopment Law as affecting Diamond Heights has been passed on by this court (*Redevelopment Agency* v. *Hayes*, 122 Cal.App.2d 777 [266 P.2d 105]).

■ This law has for its purpose the elimination of slums and unpleasant living conditions in cities, and the redevelopment of badly planned areas or unused land. Together with other legislation the Redevelopment Laws have for their purpose the object of achieving sound, well-planned cities. In the enactment of the California Redevelopment Law the Legislature of this state has declared that blight exists here (Health & Saf. Code, § 33040), and somewhat repetitiously describes the evils of such blight (Health & Saf. Code, §§ 33040, 33045, 33046, 33048). The Legislature also found this blight to be a social and economic liability menacing the health, safety, and general welfare of the people of this state. (Health & Saf. Code, §§ 33040, 33045, subd. (a).) In section 33046, subdivision (a), the Legislature finds that existing blight promotes a lack of incentive in the individual landowner and thereby causes further obsolescence, deterioration, and disuse, and also finds that blight is usually found in areas divided into small and widely scattered ownerships where private solution is difficult, costly, and uneconomic—if not impossible. (Health & Saf. Code, § 33046, subd. (c).) In the law, the Legislature gives the power of eminent domain to the authority whenever redevelopment cannot be accomplished by private enterprise alone. (Health & Saf. Code, § 33267, subd. (b).)

■ The appellants here urge that the Redevelopment Law is unconstitutional as applied to nonslum-type "blighted" areas or to undeveloped vacant land areas so designated. In support of this position the appellants cite *Schneider* v. *District of Columbia*, 117 F.Supp. 705, and also *Redevelopment Agency* v. *Hayes, supra*. The citation of *Schneider* v. *District of Columbia* can be of small solace to appellants here, since the opinion in *Berman* v. *Parker*, 348 U.S. 26 [75 S.Ct. 98, 99 L.Ed. 27], supersedes the Schneider opinion and affirms the validity of the Federal Redevelopment Law applicable to the District of Columbia. Appellants also cite *Redevelopment Agency* v. *Hayes*, 122 Cal.App.2d 777 [266 P.2d 105]. However, that case in fact held that the Redevelopment Law is not unconstitutional as applied to nonslum-type "blighted" areas or to undeveloped, vacant land areas so designated, specifically the Diamond Heights area. In *Berman* v. *Parker, supra*, it is said, "In the present case, the Congress and its authorized agencies [the District of Columbia Redevelopment Land Agency, the National Capital Planning Commission, and the District Commissioners] have made determinations

which take into account a wide variety of values. It is not for us to reappraise them.'' (P. 33.)

''Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch.'' (Pp. 35, 36.)

''If the Agency considers it necessary in carrying out the redevelopment project to take full title to the real property involved, it may do so. It is not . . . the function of the courts to sort and choose among the various parcels selected for condemnation.

''The rights of these property owners are satisfied when they receive that just compensation which the Fifth Amendment exacts as the price of the taking.'' (P. 36.)

''If owner after owner were permitted to resist these redevelopment programs on the ground that his particular property was not being used against the public interest, integrated plans for redevelopment would suffer greatly. The argument pressed on us is, indeed, a plea to substitute the landowner's standard of the public need for the standard prescribed by Congress. But as we have already stated, community redevelopment programs need not, by force of the Constitution, be on a piecemeal basis—lot by lot, building by building.'' (P. 35.)

We feel that the appellants' contention that the Redevelopment Law is unconstitutional as applied to nonslum-type ''blighted'' areas is not supportable, and hold that in the absence of an unconstitutional exercise of the powers granted under the Community Redevelopment Law the legislation is valid and constitutional.

 The appellants also urge that the Redevelopment Law is unconstitutional as being legislation by the state on matters of municipal concern, in violation of article XI, sections 6, 8 and 13 of the state Constitution; and also that there has been an unlawful delegation of legislative power to the agency by the board of supervisors. Neither of these contentions is well taken. It must be remembered that redevelopment, when enacted by the state, is a matter of state interest, and its implementation is in order to effect a state objective. The California Housing Authorities Law is particularly apposite here, since that law gives to housing authorities certain powers as public bodies corporate and politic and not as agents of the city in which they function. ''[T]he local operation

of an act of general state-wide scope may be made contingent upon determination by local authorities that conditions there require its acceptance and operation." (*Housing Authority* v. *Dockweiler*, 14 Cal.2d 437, 446 [94 P.2d 794].) The language used in *Housing Authority* v. *City of Los Angeles*, 38 Cal.2d 853, 861 ?62 [243 P.2d 515], is persuasive here: "Similarly the city under the Housing Authorities Law is an agency of the state, functioning under state law to fulfill state purposes, and is not acting pursuant to its fundamental law to effect solely municipal objectives. [Citations.] Each functioning body, the city and the housing authority, is a separate body politic vested with specific duties and powers under the Housing Authorities Law and Housing Cooperation Law to effect a state objective. Neither is functioning independently of that state law. In pursuing the state objective each is governed by the state law and neither may exercise powers not vested or recognized by that law. The city and the housing authority function as administrative arms of the state in pursuing the state concern and effecting the legislative objective." Section 33040, Health and Safety Code, provides expressly as follows: "It is found and declared that there exist in many communities blighted areas which constitute either social or economic liabilities, or both, requiring redevelopment in the interest of the health, safety, and general welfare of the people of such communities and of the State."

While legislative declarations, such as those contained in section 33040, Health & Safety Code, and 33045 of the same code, are not binding upon this court, they are, as declarations of policy, "entitled to great weight and it is not the duty or prerogative of the courts to interfere with such legislative finding unless it clearly appears to be erroneous and without reasonable foundation." (*Housing Authority* v. *Dockweiler*, 14 Cal.2d 437, 449-450 [94 P.2d 794].)

■ The appellants and amicus curiae on their behalf present a more difficult problem in relation to the application of the code sections in the Community Redevelopment Law which contain provisions for participation in the redevelopment plan by owners of property embraced in the area to be redeveloped. As is indicated in "*Redevelopment: Making Misused and Disused Land Available and Usable*," 8 Hastings Law Journal 241 (May 1957), in a footnote on page 260, the legislative enunciation of the owner's rights to participate in a redevelopment plan leaves something to be desired in clarity and certainty. These sections of the Health and Safety

Code, 33701, 33702, and also 33275, 33745, and 33746, would seem to indicate that the owners of all or part of the property to be redeveloped must be included in a plan for participation in the redevelopment of the property. Indeed, section 33701, which reads as follows: ''Every redevelopment plan shall provide for participation in the redevelopment of property in the project area by the owners of all or part of such property if the owners agree to participate in the redevelopment in conformity with the redevelopment plan adopted by the legislative body for the area. This section does not prohibit the owners from submitting an alternative plan pursuant to this part,'' and the language of section 33702, which provides, ''Every redevelopment plan which contemplates property owner participation in the redevelopment shall contain alternative provisions for redevelopment of the property if the owners fail to participate in the redevelopment as agreed,'' would appear to be mandatory in their expression.

However, section 33702, which provides, ''Every redevelopment plan which contemplates property owner participation in the redevelopment shall contain alternative provisions for redevelopment of the property if the owners fail to participate in the redevelopment as agreed,'' appears to be a recognition of the power to have redevelopment without property owner participation. Coupled with this latter language, it should be remembered that section 33267 provides, ''Within the redevelopment area or for purposes of redevelopment an agency may: . . . (b) Acquire real property by eminent domain . . .,'' thereby giving the agency the absolute power of eminent domain for proper public purposes.

Assuredly, the power of eminent domain does not contemplate any participation by the owner of the property condemned. The language contained in section 33745, ''If the redevelopment plan adopted provides for participation in the redevelopment of property in the area by the owners of such property, and if for 30 days after the adoption of the plan, the owners fail or refuse to enter into a binding agreement for participation in accordance with the plan, the alternative provisions provided for in Section 33702 become effective as the official redevelopment plan of the project area. The legislative body may extend the 30-day period by not more than 60 days,'' is certainly language which contemplates redevelopment plans which do not provide for participation by the owners, since, if such were not the case, the first sentence of the section would not be worded as it is.

We have no doubt that the Legislature, in enacting the Community Redevelopment Law, hoped that redevelopment would be possible in areas such as the Diamond Heights Area with the participation and cooperation of the owners of the property within the "blighted" area, but it is also apparent from a reading of all the sections and the entire law that there is provision for a method of redevelopment without participation by the owners of the land. For instance, the express power of eminent domain would negate the necessity of participation by the owners, if the agency in its exercise of its constitutional powers acts fairly and without discrimination. Even the language of section 33701, "Every redevelopment plan shall provide for participation in the redevelopment of property in the project area by the owners of all or part of such property . . .," contemplates that participation be not extended to all owners of the property. This, of course, imposes upon the agency a duty of reasonableness and good faith, if they wish to make participation available to part of the owners of the property embraced in the redevelopment project.

Appellants here complain that the distinction drawn by the redevelopment agency between owners of improved property and owners of unimproved property is unreasonable and discriminatory. Contrariwise, such distinction appears to be reasonable and supportable. Even the Community Redevelopment Law itself, Health and Safety Code, section 33275, recognizes the distinction between these classes of property; that section reads: "Without the consent of an owner an agency shall not acquire any real property on which an existing building is to be continued on its present site and in its present form and use unless such building requires structural alteration, improvement, modernization or rehabilitation, or the site or lot on which the building is situated requires modification in size, shape or use or it is necessary to impose upon such property any of the standards, restrictions and controls of the plan and the owner fails or refuses to agree to participate in the redevelopment plan pursuant to Sections 33701 and 33745." The distinction between improved and unimproved property is such a distinction as to appeal to the reason. The mere statement of such a distinction raises a presumption of fairness and, as is pointed out in *Fraenkel* v. *Bank of America*, 40 Cal.2d 845, 849 [256 P.2d 569], "All presumptions favor the legislative classification, which cannot be overturned unless plainly arbitrary. [Citations.] If the

Legislature could have acted upon any conceivably reasonable ground, the courts must assume that the Legislature acted upon such basis. In short, the Legislature's judgment 'on the question whether or not a particular provision shall be made for any class of cases, and as to the classification thereof, is not to be interfered with except for very grave causes and where it is clear beyond reasonable doubt that no sound reason for the legislative classification, and for the different provisions regarding the same, exists.' [Citation.]''

Appellants and amicus curiae have well and ably advanced their arguments. They have included a summary of that portion of the law regarding participation and contrasted it with other states' redevelopment laws. Their arguments are persuasive but, we feel, not governing.

Furthermore, it appears here that by attempting to enjoin a threatened legal action the appellants have, in fact, mistaken their remedy. All of the grounds which they urge upon this court for a reversal of the judgment of the court below are grounds which may be raised as affirmative defenses in the eminent domain proceedings which are pending in the court below. Under such facts, the judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied February 28, 1958, and appellants' petition for a hearing by the Supreme Court was denied March 26, 1958.