[Civ. No. 24256. Second Dist., Div. One. Aug. 26, 1960.]

GIICHI TAKATA et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

J. Marion Wright and Owen E. Kupfer for Appellants.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and Marcus E. Crahan, Jr., Deputy City Attorney, for Respondents.

FOURT, J.—This is an appeal from a judgment affirming an order to vacate and demolish issued by the Board of Building and Safety Commissioners of the City of Los Angeles (hereinafter referred to as the "Board"), and refusing to issue an injunction against the enforcement of said order.

A résumé of the facts is as follows:

Appellants are owners of certain real property located at 717-719 Kohler Street in the city of Los Angeles, which is improved with a three-story wood frame and wood-sided apartment house building constructed in 1905 and being approximately 36 feet 6 inches by 100 feet in size. The building at the time of trial was being used as an apartment house and had been used for this purpose for a number of years prior thereto. Appellants purchased the property in December, 1953, for the sum of $30,000.

The property is located in the downtown section of the city of Los Angeles in an area designated by the department of building and safety as the "Downtown Rehabilitation Area." The area comprises a portion of Fire District Number 1 and is currently zoned as an "M-2" zone in which commercial, hotel, apartment and rooming house uses and light manufacturing uses are permitted.

On or about July 3, 1956, the superintendent of building caused to be recorded in the Office of the County Recorder of Los Angeles County a certificate stating that he had determined appellants' building to be a "Substandard Residential Building" within the terms of section 91.4902 of the Los Angeles Municipal Code, which recorded certificate constitutes an encumbrance and a cloud on the title of appellants' property.

On or about the same date the superintendent of building issued a written report of an inspection survey of appellants' building made in April and May of 1956, as a result of which

said superintendent asserted that he had determined that there is probable cause to believe appellants' building is a substandard residential building, a dangerous building and a nuisance. Appellants were given written notice of a hearing to be conducted before the Board of Building and Safety Commissioners upon said report of the superintendent and requiring appellants to show cause why their building should not be condemned as a public nuisance and abated as such nuisance.

Thereafter, commencing in July of 1956 and ending November 27, 1956, various hearings were had before a hearing examiner at which oral and documentary evidence was received. On January 21, 1957, the Board adopted recommendations of the hearing examiner and ordered appellants' building to be vacated, demolished and removed.

On June 19, 1957, the within action was filed and an alternative writ of mandate was issued herein and served on respondents. On June 24, 1957, in compliance with the writ of mandate, the Board set aside the order of demolition of January 21, 1957, and ordered the administrative proceeding to be reopened.

Subsequently, additional hearings were had before the Board's hearing examiner on April 7, 8, and 9, 1958, and additional oral and documentary evidence was received. Nine witnesses testified on behalf of the respondents. The oral proceedings were reported and transcribed and on June 9, 1958, the hearing officer made his written summary of the evidence, findings of fact and recommendations that appellants' building be "vacated, demolished and removed."

' On July 17, 1958, the Board, by resolution, adopted and approved the report and findings of the examiner and ordered appellants' building to be vacated and demolished.

Subsequently, appellants filed an amended petition for writ of mandate, for declaratory relief and for injunction. Respondents' demurrer was sustained to appellants' purported cause of action for declaratory relief, and the matter proceeded to trial on the cause of action for mandamus to review, under the provisions of section 1094.5 of the Code of Civil Procedure, the resolution and order of respondent Board made and issued on July 17, 1958, and on the cause of action for injunction.

Trial was had in the Superior Court of Los Angeles County on January 5, 6, 7 and 13, 1959. The administrative record was received into evidence for purposes of judicial review of the subject resolution and order to vacate and demolish. No other

evidence was received on the cause of action for mandamus. Additional evidence was received, however, on the cause of action for injunction. Three witnesses testified in the superior court, namely, Tracey Abell, Principal City Planner; William H. Claire, Assistant Director of the Community Rehabilitation Agency of Los Angeles; and Harold L. Manley, Assistant Superintendent of Building and head of the Conservation Division.

Appellants present a number of contentions on appeal. Appellants' first contentions are directed to the purported insufficiency of the evidence. They assert that: (a) "The Evidence Is Insufficient to Support the Findings of the Superior Court in Material Respects"; (b) "The Evidence in the Administrative Proceeding Was Insufficient to Support the Finding and Order of Demolition 'In the Light of the Whole Record,' and the Findings Are Insufficient to Support the Order of Demolition"; (c) "The Evidence Failed to Support the Finding of 'Common Law Nuisance' as a Basis for Demolition."

In reviewing the findings and orders of a local, quasi-judicial administrative body, the *trial court* is confined to the evidence received by the respondent Board; and in reviewing that evidence may not reweigh it, but may only consider whether there is any substantial competent and material evidence in the administrative record to sustain the findings and order attacked. (*Thompson* v. *City of Long Beach,* 41 Cal. 2d 235 [259 P.2d 649]; *Damiani* v. *Albert,* 48 Cal.2d 15 [306 P.2d 780]; *Jenner* v. *City Council of the City of Covina,* 164 Cal.App.2d 490 [331 P.2d 176]; *Sultan Turkish Bath, Inc.* v. *Board of Police Commissioners,* 169 Cal.App.2d 188 [337 P.2d 203]; *Rudolph* v. *State Athletic Commission,* 177 Cal. App.2d 1 [1 Cal.Rptr. 898].)

The *appellate court,* in reviewing the judgment of a trial court affirming the findings and order of a local, quasi-judicial administrative tribunal, will not reweigh the evidence received by the trial court, but itself is limited to determine whether there is any substantial evidence in the record on appeal to support the trial court's judgment. (*Southern California Jockey Club, Inc.* v. *California Horse Racing Board,* 36 Cal.2d 167, 174 [223 P.2d 1].)

The term "substantial evidence in light of the whole record" is equivalent to the "substantial evidence rule." (*Martin* v. *Alcoholic Beverage Control Appeals Board,* 52 Cal. 2d 238, 246 [340 P.2d 1]; *Marini* v. *Department of Alcoholic Beverage Control,* 177 Cal.App.2d 785 [2 Cal.Rptr. 714].)

160

Appellants contend that the evidence is insufficient to support the findings of the superior court in "material respects."

■ Specific attack is made upon Finding X which provides as follows:

"X

"The respondents and defendants have not been nor are they arbitrary or discriminatory in the administration or enforcement of those ordinances of the City of Los Angeles which it is their duty and responsibility to administer and enforce. Petitioners and plaintiffs have failed to show any evidence of unequal, arbitrary or discriminatory enforcement of the law by respondents and defendants."

The trial court in its "Memorandum for Counsel" stated in pertinent part:

"Third: Plaintiffs contend that unequal, arbitrary, and discriminatory enforcement of laws and ordinances is a denial of the equal protection guaranteed by the Federal Constitution. With this principle there can be no argument. *However, plaintiffs have failed to present convincing evidence to this Court that the Building Department or the Board of Building and Safety Commissioners have been, or are, discriminatory in the enforcement of the Building and Safety Code.* (Emphasis added.)

"The evidence shows that there is a division of the Building Department in the City of Los Angeles which devotes all of its time and energy to a small area of the City roughly east of Main Street and between First and Ninth Streets. This division was established pursuant to appropriate action taken by the City Council in an effort to rehabilitate an area which it considered a 'dark blot on the map of the central part of the City of Los Angeles.' It has not been selected as a 'blighted area' or a 'slum' under any State statute. Until that is done, if in fact it ever can be, the property in the area remains subject to the general police powers of the City.

"*Plaintiffs have presented no testimony that any building in any other area of the City has not been condemned and ordered demolished where grounds for such an order exist.* The evidence does show, however, that so many orders to repair or demolish have had to be made in the 'Downtown Rehabilitation District' because of the age, construction of, and deterioration of the many old wooden structures there existing, *not because of their location, but because of their condition.* (Emphasis added.)

"*Since plaintiffs have not shown one instance of the failure*

*of the Department to enforce its regulations in any other section of the City, or that the same means and methods have not been impartially applied to all property owners in similar circumstances, the Court holds that they have failed to show any evidence of unequal, arbitrary or discriminatory enforcement of laws by the Board of Building and Safety Commissioners, or by any of the other defendants.* (See: *Wade* v. *City & County of San Francisco,* 82 Cal.App.2d 337 [186 P.2d 181], and *People* v. *Gordon,* 105 Cal.App.2d 711 [234 P.2d 287].)'' (Emphasis added.)

As stated by appellants in their opening brief, ''This finding was vital in connection with appellants' complaint of 'unequal enforcement' '' of the demolition sections of the building code.

What the evidence does show is that respondents are inspecting existing buildings, both residential and commercial, throughout the city; and that for administrative purposes, they have presently divided the city into some 15 general areas for such inspection, and have organized and departmentalized a conservation bureau within the department of building and safety to conduct such inspection, in cooperation with the city's health and fire departments.

The evidence further shows that these 15 inspection areas include an area within the Central City, commonly bounded by First and Olympic Streets, and Main and Central Avenue; and that these inspection areas were selected on the basis of investigation, United States Census data, and the expert training and experience of certain city officers, including the superintendent and assistant superintendent of building, which information proved the need in fact for such inspection.

The evidence also includes reference to the action taken by the city council in appropriating money to finance such inspection in an area within the Central City designated as the ''Downtown Rehabilitation District,'' including reference to the fact that one of the reasons used to support such appropriation, in addition to the preservation of public health and safety, was that such inspection was necessary to protect the economy, property values and tax structure of the city.

There is further evidence showing that in addition to these 15 city-wide inspection areas, the department of building and safety inspects existing buildings on an individual basis, as a result of its own field inspections in connection with new construction, and as a result of referrals from other city departments and requests from the general public.

The record shows that in connection with its inspection of

existing buildings the conservation bureau of the department of building and safety inspects the buildings requiring such inspection within each inspection area on an individual basis; that any order for correction or demolition which results from such inspection is directed against the specific building.

It would serve no useful purpose to set forth at length excerpts from the transcript. Suffice it to say, the finding by the trial court that there has been no arbitrary or discriminatory administration or enforcement of the ordinances is supported by the record.

Next, it is asserted that the evidence in the administrative proceeding was insufficient to support the finding and order of demolition "in the light of the whole record," and the findings themselves are insufficient to support the order of demolition.

The demolition sections of the municipal code provide for a hearing by the Board, written findings of fact, and a written order for repair or demolition. (Los Angeles Municipal Code, §§ 96.111; 96.112 and 96.116.)

At the hearing before a hearing officer appointed by respondent Board, both testimony and documentary evidence, were introduced. The department of building and safety presented the expert testimony of various inspectors and two members of the fire department.

These various witnesses testified in substance that appellants' apartment-hotel building was a dangerous and substandard residential building, which was unfit for human habitation and a public nuisance in that it was a fire, health, and structural hazard. They based their opinions on the fact that the building has inadequate and structurally deficient footings and foundation; that the building is wracked and out of plumb; that it is progressively collapsing; that it has inadequate exits and no fire resistive construction while located in Fire District Number 1, and in a highly congested light manufacturing zone; that it is dilapidated and deteriorated to the point where it not only is not fit to live in, but is a health, fire and structural hazard and menace to adjoining property, its occupants and the general public; that its electrical wiring is deteriorated, hazardous and overloaded; that its plumbing and heating facilities not only are inadequate for its present use and occupancy, but are in such a state of disrepair that the unhealthful condition of the building is further augmented.

In addition to the above, evidence was received that the building is deteriorated and dilapidated beyond a point of

reasonable repair; that the repairs required to eliminate the hazards and deficiencies existing in the building and to bring the building up to a minimum condition of safety, stability and usability for its present use, occupancy, location, size, and construction ($52,443.96) would require work amounting to a reconstruction of the building (in view of the estimated cost of replacement of $64,196.81) ; and that as such, repair is not only unreasonable but for all practical purposes, impossible. Appellants submitted no contradictory evidence in rebuttal.

The Board's hearing officer submitted a written summary and discussion of the evidence, proposed findings of fact, and recommendations to the Board under date of June 9, 1958, and the Board adopted the findings and recommendations of demolition on July 17, 1958.

The Board made some 25 findings of fact. Of these 25 findings, only eight were directed solely at violations of the portion of the ordinance known as the building code.[1] The order requiring that the building be demolished rests not only upon findings of violation of the Los Angeles Municipal Code, but also upon the following:

"4. That the structure because of dilapidation, deterioration, decay, and faulty construction, particularly in respect to the underfloor structural members and footings, is likely to partially or completely collapse.

---

[1]Findings of Fact:

"5. That the building is located in a congested area, is constructed of highly flammable materials, and is a fire and life hazard appreciably in excess of the average building in the same location and of buildings constructed in accordance with the minimum standards of Article 1, Chapter 9 of the Los Angeles Municipal Code.

"7. That the building has in nonsupporting parts less than 50% and in supporting parts less than 66% of the fire-resistive qualities or characteristics required by law or ordinance in the case of a newly constructed building of like area, height, and occupancy in the same location.

"11. That the exits from the building do not comply with the provisions of division 49 of the Building Code.

"12. That window areas and ventilation in certain rooms of the building are less than that required by division 49 of the Building Code.

"15. That the yards around the building do not comply with Article 2, Chapter 1 of the Los Angeles Municipal Code.

"19. That the building is a dangerous building and a substandard residential building within the terms of Chapter 9 of the Los Angeles Municipal Code.

"22. That the building is nonconforming and is in need of repairs and alterations required by the Los Angeles Municipal Code in an amount exceeding 50% of the replacement cost.

"25. That the building cannot be reasonably repaired so that it will no longer exist in violation of the Los Angeles Municipal Code.''

"8. That the building by reason of materials of construction, obsolescence, dilapidated condition, deterioration, damage, and electric wiring is in such condition as to be a fire hazard and is so situated to endanger life or other buildings or property in the vicinity and provide a ready fuel supply to augment the spread and intensity of fire arising from any cause.

"9. That the building would require substantial reconstruction to effectively reduce the fire hazard.

"13. That the building has improper sanitation and safety in that it lacks one bath, lavatory, and water closet in each dwelling unit, lacks hot running water to each kitchen sink, and has improperly ventilated cooking facilities.

"14. That the electrical wiring in the building is defective and hazardous, and is inadequate for the needs of the occupants.

"16. That the building is maintained in violation of specific requirements of the Los Angeles Building Code and *State Health and Safety Code.* (Emphasis added.)

"17. That the building is manifestly unsafe for the purpose for which it is used.

"18. That the building is unfit for human habitation or occupancy within the terms of the State Health and Safety Code.

"20. That the building is a public nuisance as defined in Chapter 9 of the Los Angeles Municipal Code and the *State Health and Safety Code.* (Emphasis added.)

"24. That the required repairs and alterations would amount to a substantial reconstruction of the building and the cost of such repairs and alterations would probably exceed the value of the building."

While some of the above are merely conclusions, nevertheless, the evidence does also support the "factual findings." These "factual findings" clearly support the order of demolition.

Appellants' contention that their building was declared to be a nuisance merely because of its wooden construction (*Armistead* v. *City of Los Angeles,* 152 Cal.App.2d 319, 326 [313 P.2d 127]), is not supported by the record. The evidence shows the building to be a *nuisance in fact.* ▮ As stated in *Stoetzner* v. *City of Los Angeles,* 170 Cal.App.2d 394 at page 396 [338 P.2d 971]:

"No argument or citation of authorities is needed for the proposition that a building erected for use as, and which

is used as a hotel and which has so deteriorated as to be unsafe for human habitation, is a public nuisance or for the proposition that such a nuisance may be ordered abated by the demolition of the offending structure if the nuisance which it creates cannot be otherwise abated.''

 Apart and aside from the municipal code, the city has power to abate public nuisances. (*Perepletchikoff* v. *City of Los Angeles,* 174 Cal.App.2d 697, 699 [345 P.2d 261].)

The trial court's Finding of Fact IX provides:

''The respondent Board acted independently and properly; reviewed the entire record; and applied proper and lawful standards in reaching its conclusion which is based upon *substantial evidence in light of the whole record,* that petitioners' and plaintiffs' building located at 717-719 Kohler Street, Los Angeles, California, *is a public nuisance, is unsafe, is substandard, non-conforming, a fire hazard, a menace to life, limb, property and the safety and welfare of the community, and is unfit for human habitation,* and that said building cannot be reasonably repaired so that it will no longer exist in violation of applicable law; that said building must be demolished.'' (Emphasis added.)

 It is clear that the evidence and the findings based thereon would support an order of demolition of an existing public nuisance without reference to the ordinance. (Health & Saf. Code, §§ 12510, 15024, and 17821; *Perepletchikoff* v. *City of Los Angeles, supra,* at p. 710; *People* v. *Foerst,* 10 Cal.App.2d 274, 275 [51 P.2d 455]; *People* v. *United Capital Corp.,* 26 Cal.App.2d 297, 299 [79 P.2d 186]; *People* v. *Vasquez,* 144 Cal.App.2d 575 [301 P.2d 510].)

The trial judge very succinctly set forth the quantum of the evidence when he stated in his ''Memorandum for Counsel'' that:

''This Court has carefully examined the reporter's transcript and the record of the proceedings before the Hearing Officer appointed by the Board, . . . *and finds not only that said evidence is substantial, but that it is overwhelming.* In this Court's opinion, the Hearing Officer and the Board would have been most delinquent and remiss in their duties had they not made an order requiring the plaintiffs to demolish their building.

''*The reporter's transcript is replete with uncontradicted evidence that the three-story wooden structure located on this property, and presently being used as an hotel-apartment, is in such a deteriorated condition that it might collapse at*

*any time, and that if a fire were to commence in this structure it would travel so fast that it would be a miracle if many lives were not lost.''* (Emphasis added.)

Appellants' next contention is that the 50 per cent code rule was erroneously and unconstitutionally applied to their preexisting building.

The same contention was raised in *Perepletchikoff* v. *City of Los Angeles, supra,* 174 Cal.App.2d 697. Although there is dictum at page 707 to the effect that the 50 per cent provision must be confined to buildings constructed after enactment of the ordinance, here as was true there, the issue need not be determined since it clearly appears that the instant building is a *nuisance in fact* and therefore, it is immaterial whether the 50 per cent provisions of the ordinance declares it to be so.

Appellants next contend that the state has preempted the field of ''slum clearance'' under the Community Redevelopment Law[2] to the exclusion of independent local action by the department of building and safety.

The trial court's Finding of Fact XI provides in substance that the appellants' building *is not* affected by the Community Redevelopment Law of the State of California, by virtue of the fact that their building *''is not presently located in an area of the City of Los Angeles which has been designated for redevelopment pursuant to said law.''* (Emphasis added.)

Since appellants' building *is not* within a redevelopment area, it follows that their contention is that the State of California, by enacting the Community Redevelopment Act has deprived the city of its police power and of its obligation to the public to protect life and health by ordering the abatement of existing nuisances constituting actual danger regardless of the location of the nuisance (*i.e.* even though not within a redevelopment area).

''Community Redevelopment,'' both as provided for by statute and administered, is concerned with the *redevelopment*[3] of *areas*[4] not smaller than a city block[5] evidencing certain conditions (among which are substandard buildings, lack of proper or adequate municipal planning or facilities, such as roads, sidewalks and sewers, and substandard environment), where such redevelopment is not otherwise feasible but is finan-

[2] Health and Safety Code, sections 33000 et seq.
[3] Health and Safety Code, section 33013.
[4] Health and Safety Code, section 33004.
[5] Health and Safety Code, section 33011.

cially possible, through the use of the power of eminent domain.

■ It has been interpreted to provide a *remedy* for the elimination of slums and unpleasant living conditions in cities, and the redevelopment of badly planned areas or unused land with the purpose of achieving sound, well-planned cities. (*Fellom* v. *Redevelopment Agency of the City & County of San Francisco,* 157 Cal.App.2d 243, 246 [320 P.2d 884], app. dismissed 358 U.S. 56 [79 S.Ct. 111, 3 L.Ed.2d 47].)

■ The act is not concerned with, nor does it attempt to provide, a remedy for or preclude the use of the police power to regulate, the *maintenance* of any building or buildings within a city. Indeed, the act contemplates something much larger than the existence of substandard buildings, and has been held to acquire a compelling economic need. (*Redevelopment Agency of the City & County of San Francisco* v. *Hayes,* 122 Cal.App.2d 777 [266 P.2d 105], cert. den. 348 U.S. 897 [75 S.Ct. 214, 99 L.Ed. 705].)

■ The provisions contained in that chapter of the Los Angeles Municipal Code relating to building regulations, both expressly and by their administration, are applicable only to repair, maintenance or demolition of a certain class of *buildings.* Moreover, the lawful enforcement of these provisions finds support only where the conditions in *each* building (on an individual building by building basis as distinguished from an area) to which they may be applied justify such enforcement *in fact.* (*Armistead* v. *City of Los Angeles, supra,* 152 Cal.App.2d 319.)

To accept appellants' contention would have the effect of declaring that the city, once it adopted "Community Redevelopment," could no longer lawfully protect its citizens and their property from hazardous structures except through the use of the power of eminent domain, *and* where such structures are in areas which are properly subject to "Redevelopment."

As stated by the trial court in its "Memorandum for Counsel":

"The action of defendants in ordering the abatement of an existing nuisance *occurring on a parcel of property in an area not affected by any of these* three *Acts* (*i.e.* Community Redevelopment Act, Housing Authorities Law, and Housing Cooperation Law) is not an action inconsistent with such State legislation. *If and when the area in which plaintiffs' property is located becomes included in any Project area wherein development or slum clearance is commenced by any one of the*

*State authorities, then, and only then, would the action here taken by the City become inconsistent with State law and be in excess of the authority presently existing in the defendants.''* (Emphasis added.)

Next, the appellants assert that the building code fails to set up clear and adequate standards for the reinspection of existing buildings and that the city council has unlawfully delegated its legislative powers and functions to administrative officials.

While the Legislature may not, as a general rule, confer unlimited discretionary power upon an administrative body or officer without designated standards to guide the action of such a body or officer, it has been held that the granting of discretionary power even without specific standards to guide the exercise of such power is proper in certain cases. (*In re Petersen,* 51 Cal.2d 177 [331 P.2d 24].)

The essential requirement of due process is met when the administrative body or officer is required by the particular ordinance or statute to determine the existence or nonexistence of the facts necessary to the exercise of the authority conferred before such authority is exercised. (*Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 362 [203 P.2d 37].)

Applying these principles to the challenged standards as contained in sections 91.1603(b), 91.4902(s), 96.101, 96.112 and more particularly subsection (c) of 96.112 of the Los Angeles Municipal Code, these standards provide for a determination of the essential facts before the exercise of the administrative authority conferred in divisions 16 and 49 of article 1, and article 6 of chapter 9 of the Municipal Code, and in addition provide the method for the exercise of that authority upon the determination of such facts; and as a consequence, these standards meet the essential requirements of a valid delegation.

Appellants' other contentions have already been disposed of. For the reasons stated, the judgment affirming the order of vacation and demolition and refusing to issue an injunction against the enforcement of said order is affirmed.

Wood, P. J., and Lillie, J., concurred.