[No. D037231. Fourth Dist., Div. One. Dec. 17, 2001.]

REDEVELOPMENT AGENCY OF THE CITY OF CHULA VISTA,
Plaintiff and Appellant, v.
RADOS BROS., Defendant and Respondent.

COUNSEL

John Kaheny, City Attorney; Luce, Forward, Hamilton & Scripps, Charles A. Bird; Daley & Heft, Dennis W. Daley and James D. Mathison for Plaintiff and Appellant.

Asaro, Keagy, Freeland & McKinley, Roscoe D. Keagy, Richard R. Freeland; and Charles F. Campbell for Defendant and Respondent.

## OPINION

**HUFFMAN, Acting P. J.**—In this eminent domain action, plaintiff Redevelopment Agency of the City of Chula Vista (the Agency) appeals a judgment of dismissal in favor of defendant Rados Bros. (Rados). The Agency persuasively contends the trial court erred by determining the acquisition of the Rados property was not for a public use, the property was not necessary for the redevelopment project in question and the acquisition would be an unlawful de facto taking by the San Diego Unified Port District (Port District). We reverse the judgment and remand the matter to the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1974 the Agency adopted a redevelopment plan for the Bayfront Redevelopment Project (Bayfront Project). Originally, the Bayfront Project

roughly comprised all City of Chula Vista (the City) land lying west of Interstate 5, excluding land within the Port District's jurisdiction. In 1998 the Agency amended the plan to include Port District land, although it retained sole discretion over development of the land.

The objectives of the Bayfront Project include the provision of adequate roadways, the renovation of businesses to promote their economic viability, the elimination of blight and deterioration, and the stimulation of private sector investment in development. The redevelopment plan is not "a specific plan for the redevelopment," but "establishes a process and framework for implementation," including the authority to acquire property by eminent domain.

BF Goodrich Aerospace Aerostructures Group (BFG) operates a manufacturing facility located within the Bayfront Project area, both north and south of a proposed westerly extension of H Street to the harbor area (north and south campuses). The campuses consist of both property BFG owns and leases from the Port District. Rados owns approximately 3.2 acres of land in the Bayfront Project area and adjacent to BFG corporate offices on the north campus.

On July 13, 1999, the Agency, the City, the Port District and BFG entered into a relocation agreement.[1] The agreement calls for a number of land exchanges to allow BFG to consolidate its facility on an expanded north campus, leaving the south campus available for Port District development and the extension of H Street. BFG and the Port District are to exchange ownership of properties on the north and south campuses and the Port District is to pay the Agency $3 million for its transfer of an Agency parcel adjacent to the north campus to BFG and the possible acquisition of the Rados property for transfer to BFG. The relocation agreement provides that if a purchase of the Rados property cannot be negotiated, the Agency shall consider adopting a resolution of necessity for acquisition by eminent domain.[2] If the Agency does not acquire the Rados property, BFG may, at its sole discretion, accept $1,059,409 in lieu thereof or terminate the agreement.

The relocation agreement provides that BFG "shall not be prevented" from using the Rados property for parking for an initial six-year period, during which development of the expanded north campus will occur. However, if at the end of that period BFG has not committed to developing the

---

[1] Rados erroneously asserts that only portions of the relocation agreement were introduced at trial. The parties pointed out certain portions of the document to the court, but the entire document was submitted.

[2] Before the relocation agreement was entered into, the Agency made a statutory offer to purchase the Rados property. Rados did not respond.

property "into a permanent use that is integrated with an industrial and/or office development project on the [north] [c]ampus," the Agency may reacquire it for $1,052,409 plus 6 percent interest. BFG retains the right to sell the Rados property to a third party, but the Agency's option to reacquire the land is binding on successive owners.

The Agency and the City, which are both governed by the city council, held a joint meeting on July 27, 1999. Rados objected to a taking of its property, explaining it had contracted to have the vacant buildings removed from it. After a staff presentation and lengthy discussion, the City and the Agency adopted resolutions approving the redevelopment agreement and the Agency adopted a resolution of necessity for the acquisition of the Rados property.

The resolutions state the BFG relocation project is located within the Bayfront Project area "and the benefits associated with the [relocation agreement] help advance the goals and objectives of the Bayfront Redevelopment Plan," and the Rados property "shall be acquired for the purposes of transferring it to BFG as part of [its] relocation project to consolidate and modernize [its] campus north of the proposed 'H' Street extension[.]"

The resolution of necessity states the public interest and necessity require BFG's relocation because it will "allow for the potential redevelopment of the [south campus], including the environmental investigation [and] cleanup," "create the opportunity to extend 'H' Street which is necessary for better public access to the waterfront . . . . ," "stimulate [BFG's] investment [approximately $47 million] in the modernization and capitalization of [its] campus which is a major corporate entity and employer in the City," and "promote the redevelopment of the [Rados] [p]roperty into office/industrial uses whereas [it] is currently in a blighted and dilapidated condition."

The Agency filed a complaint in eminent domain against Rados.

At trial, the court determined the proposed taking is not for a public use and the Agency's adoption of the resolution of necessity constitutes a gross abuse of discretion because "the blighted condition of the [Rados] property appears to be the only justification" for the taking, but Rados represented it had contracted to have the buildings on its property removed. The court further found that because the relocation of BFG would benefit the Port District, and the Rados parcel was outside its territorial limits, the proposed acquisition "would amount to a *defacto* [*sic*] taking by the Port [District]. . . . without the need for the Port [District] to adopt a [resolution of necessity]." A judgment of dismissal was entered on October 26, 2000.

DISCUSSION

I

*Public Use*

■ A public entity may acquire property by eminent domain only for a public use. (Code Civ. Proc., § 1240.010.) The Agency contends the court erred by finding the proposed taking does not satisfy the public use requirement. ■ The sufficiency of the purported public use is a question of law we review independently. (*Anaheim Redevelopment Agency v. Dusek* (1987) 193 Cal.App.3d 249, 263 [239 Cal.Rptr. 319] (*Anaheim*).)

■ The Bayfront Project redevelopment plan was adopted under the Community Redevelopment Law (Health & Saf. Code,[3] § 33000 et seq.), whose purpose is the sound development and redevelopment of blighted urban areas. (§§ 33037, subd. (a), 33320.1; *Fellom v. Redevelopment Agency* (1958) 157 Cal.App.2d 243, 246 [320 P.2d 884] (*Fellom*).) A blighted area is generally characterized by a combination of specified conditions, including unsafe or abandoned buildings, excessive vacant lots, high crime rates, incompatible uses of adjacent properties, depreciated or stagnant property values or impaired investments, abnormally high business vacancies and a lack of necessary commercial facilities. (§ 33031; *Sweetwater Valley Civic Assn. v. City of National City* (1976) 18 Cal.3d 270, 274 [133 Cal.Rptr. 859, 555 P.2d 1099].)

A public agency may acquire property through eminent domain whenever redevelopment cannot be accomplished by private enterprise alone. (§§ 33037, subd. (b), 33342.) It is well established that acquiring property for redevelopment constitutes a public use. (*Fellom, supra,* 157 Cal.App.2d at p. 246; *Anaheim, supra,* 193 Cal.App.3d at p. 263; § 33037, subd. (c) [legislative declaration that redevelopment of blighted areas constitutes public use]; Code Civ. Proc., § 1240.010 [when power of eminent domain is statutorily authorized for a particular purpose, the purpose is deemed public use].)

Here, the public use was established when the Agency adopted the Bayfront Project and acquired the statutory power to condemn property within the redevelopment district. (*Anaheim, supra,* 193 Cal.App.3d at p. 264; *Redevelopment Agency v. Del-Camp Investments, Inc.* (1974) 38 Cal.App.3d 836, 841 [113 Cal.Rptr. 762].) Any challenge to a redevelopment plan must be brought within 60 days of its adoption; it cannot be raised

---

[3]Statutory references are to the Health and Safety Code except when otherwise specified.

later in an eminent domain proceeding. (*Redevelopment Agency, supra,* 38 Cal.App.3d at p. 841; § 33500.) The legislative body's adoption of a redevelopment plan "shall be final and conclusive, and it shall thereafter be conclusively presumed that the project area is a blighted area[.]" (§ 33368; *Sweetwater Valley Civic Assn. v. City of National City, supra,* 18 Cal.3d at p. 276.)

It appears that instead of applying a conclusive presumption of blight in the Bayfront Project area, the trial court applied the blight concept to the Rados parcel individually. However, even if Rados were to eliminate the vacant buildings from its property, the proposed taking is for a public use. "A [redevelopment] project area may include lands, buildings, or improvements which are not detrimental to the public health, safety or welfare, but whose inclusion is found necessary for the effective redevelopment of the area . . . ." (§ 33321.)

Moreover, the involvement of BFG does not render the proposed taking without public purpose. "Every redevelopment plan shall provide for the agency to lease or sell all real property acquired by it in any project area, except property conveyed by it to the community." (§ 33335.) "The success of any redevelopment project is dependent upon whether private lenders, developers, owners, and tenants can be persuaded to participate in the process. Thus, a redevelopment agency is unique among public entities since . . . to achieve its objective of eliminating blight it must rely upon cooperation with the private sector." (*County of Santa Cruz v. City of Watsonville* (1985) 177 Cal.App.3d 831, 841 [223 Cal.Rptr. 272].) "Once it is determined that the taking is for a public purpose, the fact that private persons may receive benefit is not sufficient to take away from the enterprise the characteristics of a public purpose. [Citations.]" (*Redevelopment Agency v. Hayes* (1954) 122 Cal.App.2d 777, 804 [266 P.2d 105].)

II

*Necessity of Rados Property*

A

The Agency also contends the trial court erred by finding its adoption of the resolution of necessity constituted gross abuse of discretion. The power of eminent domain may be exercised only when the "public interest and necessity require the project," the "project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury" and the "property sought to be acquired is necessary for

the project." (Code Civ. Proc., § 1240.030.) A resolution of necessity must contain a declaration these criteria are satisfied, and once adopted it is conclusive thereto unless "its adoption or contents were influenced or affected by gross abuse of discretion of the governing body." (Code Civ. Proc., §§ 1245.230, subd. (c), 1245.250, subd. (a), 1245.255, subd. (b); *Redevelopment Agency v. Norm's Slauson* (1985) 173 Cal.App.3d 1121, 1129 [219 Cal.Rptr. 365].)

■ A property owner may obtain judicial review of the validity of a resolution of necessity before commencement of the eminent domain action, by petition for writ of mandate under Code of Civil Procedure section 1085,[4] or after commencement of the action by objection to the right to take. (Code Civ. Proc., § 1245.255, subd. (a).) Under either procedure, the trial court is required to apply a Code of Civil Procedure section 1085 deferential standard of review. (*Burbank-Glendale-Pasadena Airport Authority v. Hensler* (1991) 233 Cal.App.3d 577, 589 [284 Cal.Rptr. 498]; *Anaheim, supra,* 193 Cal.App.3d at pp. 258, 264.)

"In ordinary mandamus proceedings courts exercise very limited review 'out of deference to the separation of powers between the Legislature and the judiciary, to the legislative delegation of administrative authority to the agency, and to the presumed expertise of the agency within its scope of authority.' [Citation.] The court may not weigh the evidence adduced before the administrative agency or substitute its judgment for that of the agency, for to do so would frustrate legislative mandate." (*Shappell, supra,* 1 Cal.App.4th 218, 230.)

" 'Judicial review of the resolution of necessity by ordinary mandamus on the ground of abuse of discretion is . . . to determine whether adoption of the resolution by the governing body of the public entity has been arbitrary, capricious, or entirely lacking in evidentiary support, and whether the governing body has failed to follow the procedure and give the notice required by law.' [Citation.]" (*Anaheim, supra,* 193 Cal.App.3d at pp. 257-258; *Burbank-Glendale-Pasadena Airport Authority v. Hensler, supra,* 233 Cal.App.3d at p. 589.) "A gross abuse of discretion may be shown by a lack of substantial evidence supporting the resolution of necessity. [Citation.] It may also be shown where at the time of the agency hearing, the condemnor had irrevocably committed itself to the taking of the property regardless of

---

[4]Generally, if an agency acts under legislative authority, review of its action is by ordinary mandamus under Code of Civil Procedure section 1085. (*Shappell Industries, Inc. v. Governing Board* (1991) 1 Cal.App.4th 218 [1 Cal.Rptr.2d 818] (*Shappell*).) A redevelopment agency's adoption of a resolution of necessity is a quasi-legislative act. (*Anaheim, supra,* 193 Cal.App.3d at p. 260.)

the evidence presented. [Citation.]" (*Santa Cruz County Redevelopment Agency v. Izant* (1995) 37 Cal.App.4th 141, 149 [43 Cal.Rptr.2d 366].) The court's review is limited to a review of the agency's proceedings; no additional evidence may be admitted. (*Id.* at p. 150.)

There is apparently no reported case discussing the standard of appellate review of the trial court's finding of gross abuse of discretion. The parties dispute whether the standard of review should be our independent review of a question of law or the substantial evidence test involving deference to the trial court's judgment. Because a Code of Civil Procedure section 1085 standard of review applied at the trial court, it appears sound to apply the appellate standard of review for ordinary mandamus. This court has held: "In reviewing the trial court's ruling on a writ of mandate (Code Civ. Proc., § 1085), the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. [Citation.] However, the appellate court may make its own determination when the case involves resolution of questions of law where the facts are undisputed." (*Saathoff v. City of San Diego* (1995) 35 Cal.App.4th 697, 700 [41 Cal.Rptr.2d 352]; *Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1217 [85 Cal.Rptr.2d 660].)[5] ▮▮▮▮ The facts are undisputed here, and thus we review the matter independently.[6]

## B

▮▮ Rados does not fault the Agency's findings that the relocation project is required by the "public interest and necessity" and "is planned or located in a manner that will be most compatible with the greatest public good and the least private injury." (Code Civ. Proc., § 1240.030.) Rados contends the Agency's adoption of the resolution of necessity constitutes a gross abuse of discretion because a finding its property is necessary to the relocation of BFG lacks evidentiary support. We are unpersuaded.

---

[5] We note that in *Shappell, supra,* 1 Cal.App.4th at page 233, the court held that "[i]n a mandamus proceeding, the ultimate question, whether the agency's action was arbitrary or capricious, is a question of law" and thus "[t]rial and appellate courts . . . perform the same function and the trial court's statement of decision has no conclusive effect upon us." (See also *Western/California, Ltd. v. Dry Creek Joint Elementary School Dist.* (1996) 50 Cal.App.4th 1461, 1492 [58 Cal.Rptr.2d 220].)

[6] Rados asserts the trial court's ruling is entitled to deference because it was required to resolve disputed factual issues based on conflicting evidence. However, Rados cites to no conflicting evidence in the record. When a party does not support its position with citation to the record, we may treat the issue as waived or meritless and pass on it without further consideration. (*Troensegaard v. Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228 [220 Cal.Rptr. 712].) In any event, a review of the record shows the material facts are undisputed. The court allowed Alexander Rados to testify regarding the Agency's claim that Rados waived any objection to the taking, testimony that was unrelated to whether the Agency committed a gross abuse of discretion in adopting the resolution of necessity.

In a report prepared for the hearing, City staff explained the "consolidation of the BFG campus north of 'H' Street requires BFG to vacate approximately 60 acres and 800,000 sq. ft. of building facilities. Such a massive consolidation is not possible without additional land assemblage north of 'H' Street to help make up for some of the lost acreage. . . . The acquisition of the Rados parcel . . . is necessary for BFG to consolidate [its] operations and master plan [its] new campus. . . ." The relocation agreement itself shows the taking of the Rados property is necessary to secure the myriad benefits of the project. Under it, BFG has the discretion to cancel the agreement if the Agency is unable to transfer ownership of the Rados parcel to it.

Rados asserts the elimination of blight is an insufficient reason for a taking, because it "submitted evidence at the administrative hearing that it had entered into a contract to raze and remove the offending structures from [the] property." Again, however, blight in the Bayfront Project area is conclusively established, and unblighted property within the redevelopment district may be taken to further the objectives of the redevelopment plan. (§ 33321.) Although blight on a particular parcel may justify a taking, it is not necessarily a prerequisite.

In an analogous context, the United States Supreme Court has held that "[o]nce the question of the public purpose has been decided, the amount and character of land to be taken for the [redevelopment] project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch. [Citations.]" (*Berman v. Parker* (1954) 348 U.S. 26, 35-36 [75 S.Ct. 98, 104, 99 L.Ed. 27].) "If owner after owner were permitted to resist . . . redevelopment programs on the ground that his particular property was not being used against the public interest, integrated plans for redevelopment would suffer greatly. . . . [C]ommunity redevelopment programs need not . . . be on a piecemeal basis—lot by lot, building by building." (*Id.* at p. 35 [75 S.Ct. at p. 104]; *Fellom, supra,* 157 Cal.App.2d at p. 247.)

We are also unpersuaded by Rados's claim its property is not required for the project because the Agency has failed to impose adequate safeguards to ensure its public use. An agency shall obligate purchasers of property acquired in a redevelopment district to use the property for the purpose designated in the redevelopment plans; begin the redevelopment of the project area within a period of time which the agency fixes as reasonable, and comply with the covenants, conditions, or restrictions that the agency deems necessary to prevent speculation or excess profit taking in undeveloped land, including right of reverter to the agency. (§ 33437; see also

§ 33336 [redevelopment plan must contain adequate safeguards redevelopment will be carried out and provide for retention of controls and establishment of any restrictions or covenants running with land sold for private use to effectuate relocation purposes]; *Redevelopment Agency v. Hayes, supra,* 122 Cal.App.2d at p. 804.)

At the hearing, a BFG representative explained it had not finalized its master plan for the expanded campus because some development was dependent on public improvements, including the extension of H Street. However, BFG envisioned using the Rados property for office or research and development facilities. The relocation agreement allots four years for BFG's relocation, and requires it within six years to commit to using the Rados property for industrial or office space. If BFG does not comply, the Agency has a five-year option to purchase the property for $1,052,409 plus 6 percent interest, thereby retaining control over the ultimate development and safeguarding against BFG's speculation or profiteering. BFG has the right to sell the property, but the Agency's option is binding on subsequent purchasers.[7]

We also reject Rados's claim the Agency's adoption of a resolution of necessity was inevitable regardless of the evidence submitted at the hearing. Rados relies on *Redevelopment Agency v. Norm's Slauson, supra,* 173 Cal.App.3d 1121, in which the court held the agency's adoption of a resolution of necessity was a sham because it "simply 'rubber stamped' a predetermined result." (*Id.* at p. 1127.) There, however, by the time of the hearing the agency had contracted with a developer and issued revenue bonds, "irrevocably committ[ing] itself to take the property . . . regardless of any evidence that might be presented at that hearing." (*Ibid.*) Here, the relocation agreement was not approved before the hearing on the resolution of necessity, but in conjunction therewith.

Further, the relocation agreement states "BFG acknowledges and agrees that . . . the Agency has not precommitted itself to commencement of eminent domain proceedings with respect to the Rados Parcel and [it] reserves the right, in its sole discretion to approve or disapprove a Resolution of Necessity with respect thereto." The hearing transcript demonstrates the city council considered the evidence and had not predetermined an outcome. Rados refers to the city council's lack of discussion regarding its plan to remove vacant buildings from its property, but again, the right to take

---

[7]For the reasons discussed in this paragraph, we are unpersuaded by Rados's assertion there is no reasonable probability its property will be devoted to a public use "within seven years from the date the complaint is filed or within such longer period as is reasonable," as required by Code of Civil Procedure section 1240.220, subdivision (a).

the property for redevelopment existed notwithstanding any lack of blight on that particular parcel.

In sum, we cannot characterize the Agency's adoption of the resolution of necessity as a gross abuse of discretion. Accordingly, the criteria of Code of Civil Procedure section 1240.030, including the necessity of the Rados property for the relocation of BFG, are conclusively established.

III

*De Facto Condemner Theory*

Rados also contends the Port District "is the *de facto* condemnor" and the Agency wrongfully "attempted to take [its] parcel for particular use by the Port [District]." Rados points out that the Port District "desired to assemble property lying to the south of the proposed 'H' Street extension for the purpose of improving development opportunities."

Rados relies on Code of Civil Procedure section 1240.020, which provides the "power of eminent domain may be exercised to acquire property for a particular use only by a person authorized by statute to exercise the power of eminent domain to acquire such property for that use." The Agency, however, has the statutory power to acquire the Rados property for redevelopment purposes. Rados cites no authority for the proposition the statute precludes the Agency from undertaking redevelopment that concomitantly benefits another public entity. In addition to the potential for redevelopment of BFG's south campus by the Port District, the relocation agreement benefits the Agency through the sale of a parcel north of H Street to BFG at the Port District's expense, redevelopment of the north campus and associated infusion of capital and retention of jobs.[8]

DISPOSITION

The judgment is reversed and the matter is remanded for the trial court's entry of an order determining the Agency has a right to take the Rados

[8]Rados asserts that because its property is not within the Port District's jurisdiction, the Port District needed the Agency to acquire it. (Harb. & Nav. Code, appen. 1, § 27 [port district may acquire property within its territorial boundaries by eminent domain].) The Agency counters that the Port District may also exercise its eminent domain powers over adjacent property outside its territorial boundaries under specified conditions (Harb. & Nav. Code, appen. 1, § 30.5) and thus could have acquired the Rados property itself. We are not required to resolve the issue.

property. Respondent Rados Bros. shall recover its costs on appeal pursuant to Code of Civil Procedure section 1268.720.

Nares, J., and Haller, J., concurred.

On January 7, 2002, and January 15, 2002, the opinion was modified to read as printed above.