[No. A050458. First Dist., Div. Four. Feb. 26, 1992.]

REDEVELOPMENT AGENCY OF THE CITY OF EMERYVILLE,
Plaintiff and Respondent, v.
ARVEY CORPORATION et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

COUNSEL

Berg, Ziegler, Lichtman & Anderson, James M. Berg and Robert M. Lichtman for Defendants and Appellants.

Erickson, Beasley & Hewitt, Alice M. Beasley, John H. Erickson and Bebe J. Anderson for Plaintiff and Respondent.

OPINION

POCHÉ, J.—Defendants, Arvey Corporation, Transo Envelope Company and International Paper Company,[1] appeal from a judgment entered on a jury verdict awarding them $225,000 for business goodwill lost because their property was condemned by the Redevelopment Agency of the City of Emeryville (Agency). In 1989 the Agency filed an eminent domain action to condemn, for public purposes, property on which appellant Arvey operated the Transo Envelope Company. In 1990 a jury trial was conducted to determine just compensation for the property taken and the amount of Arvey's lost business goodwill. Arvey does not challenge the jury's award of $3 million as the fair market value for the property taken. What Arvey is challenging here is the jury's award of only $225,000 as the amount of goodwill reasonably lost by Arvey due to the eminent domain action.

FACTS

When Arvey became aware in 1986 of a possible eminent domain action, it began searching for a new location for Transo Envelope Company. Through a series of acquisitions, Arvey and Transo after December of 1987 became operating divisions of International Paper Company, which also operated Coast Envelope Company in South San Francisco. The Agency proceeded with its plan to take the property at which Arvey operated Transo, formally filing its eminent domain action in 1989. During its search for a new location, Arvey considered a number of possible relocation sites, including two in Hayward, but eventually decided to consolidate Transo with Coast at the existing Coast facility in South San Francisco. The new combined company was dubbed TransCoast Envelope Company.

DISCUSSION

Arvey argues three issues: (1) that the trial court erred by excluding evidence of move-related expenses that were reimbursable under the Relocation Assistance Act (Gov. Code, § 7260 et seq.); (2) that Arvey was

---

[1]Transo Envelope Company was an operating division of Arvey Corporation, which was acquired by Hammermill Paper Company, which in turn was acquired by International Paper Company. Arvey Corporation, Transo Envelope Company, and International Paper Company, who are all defendants and appellants in this case, will be referred to collectively as Arvey.

unfairly prejudiced by the trial court's jury instruction as to such expenses; and (3) that the jury's award for Arvey's lost business goodwill was, as a matter of law, required to be at least $589,850. For the reasons stated below, we affirm the judgment.

## I

At issue is the relationship between two statutory schemes: the Eminent Domain Law (codified as Code Civ. Proc., § 1230.010 et seq.),[2] which provides for payment for lost business goodwill in eminent domain proceedings (§ 1263.510),[3] and the Relocation Assistance Act (codified as Gov. Code, § 7260 et seq.), which provides for administrative recovery for moving and related expenses borne by persons displaced as a consequence of projects undertaken by public entities. (Gov. Code, § 7262, subd. (a).)[4]

In order to collect for lost business goodwill under the Eminent Domain Law, the business owner must prove that "[c]ompensation for the loss [of its business goodwill] will not be included in payments" for moving and related expenses under the Relocation Assistance Act. (§ 1263.510, subd. (a)(3); Gov. Code, § 7262, subd. (a).)

The Eminent Domain Law further requires the owner of the property to take steps to mitigate the loss of goodwill. (§ 1263.510, subd. (a)(2).) Such mitigation expenses then become compensable as lost goodwill. (*People* ex rel. *Dept. of Transportation* v. *Muller* (1984) 36 Cal.3d 263, 271-272 [203 Cal.Rptr. 772, 681 P.2d 1340].) Here, some of Arvey's claimed mitigation expenses are either clearly or arguably also covered as moving expenses under the Relocation Assistance Act (Gov. Code, § 7262).

---

[2]Unless otherwise noted all subsequent statutory references are to the Code of Civil Procedure.

[3]Section 1263.510 provides: "(a) The owner of a business conducted on the property taken, or on the remainder if such property is part of a larger parcel, shall be compensated for loss of goodwill if the owner proves all of the following: [¶] (1) The loss is caused by the taking of the property or the injury to the remainder. [¶] (2) The loss cannot reasonably be prevented by a relocation of the business or by taking steps and adopting procedures that a reasonably prudent person would take and adopt in preserving the goodwill. [¶] (3) Compensation for the loss will not be included in payments under Section 7262 of the Government Code. [¶] (4) Compensation for the loss will not be duplicated in the compensation otherwise awarded to the owner. [¶] (b) Within the meaning of this article, 'goodwill' consists of the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage."

[4]Government Code section 7262 provides in pertinent part: "(a) Whenever a program or project to be undertaken by a public entity will result in the displacement of any person, the displaced person is entitled to payment for actual moving and related expenses as the public entity determines to be reasonable and necessary . . . ."

The issue is whether the Eminent Domain Law (§ 1263.510) requires that moving and related expenses be paid only under the Relocation Assistance Act (Gov. Code, § 7262) or whether it merely prohibits double payment for those expenses that potentially could be recouped under either statute or in part under each statute. Arvey contends that it has satisfied its burden of proving that compensation for the loss of its goodwill will not be included in payments under the Relocation Assistance Act if it shows that relocation assistance payments for those expenses have not yet been made.[5] For the reasons set forth below, we reject this proposition and hold that the Eminent Domain Law as contained in section 1263.510 excludes from its coverage expenses that are *payable* as relocation assistance under Government Code section 7262.

■ To determine the meaning of section 1263.510, we are to " 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) We first look to the statute's words themselves, according them their " 'usual, ordinary import.' " (*Ibid.*) " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose' " and " 'a construction making some words surplusage is to be avoided.' " (*Ibid.*) The words must be construed in their context and "the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Ibid.*)

■ At first glance, the language of subdivision (a)(3) of section 1263.510 which provides that the business owner must prove that "compensation for the loss will not be included in payments under Section 7262 of the Government Code," seems to preclude Arvey's position. On close reading, however, the language seems to leave open the possibility of payment under this section if Arvey could prove that its expenses for mitigating its goodwill loss would not *be paid* for relocation assistance by the Agency under Government Code section 7262 even though the expenses were in fact in the category of expenses *payable* under section 7262. This reading, however, makes no sense when the subdivision is viewed in the context of section 1263.510 as a whole and of the entire statutory scheme.

Subdivision (a)(4) of section 1263.510 requires Arvey to prove that "[c]ompensation for the loss will not be duplicated in the compensation

---

[5]Arvey reasons that the Agency will not pay in the Government Code section 7262 administrative action claims for expenses that it has just paid under section 1263.510 in the eminent domain proceeding. While we reject Arvey's reading of the statute, we also point out that the fallacy in Arvey's approach is illustrated by the jury award in this very case. Neither party can do more than speculate as to which, if any, of Arvey's expenses were included in the jury award of $225,000. Therefore, the Agency would not know which expenses it had already paid.

otherwise awarded to the owner." If Arvey's reading of subdivision (a)(3) were correct, subdivision (a)(3) would be rendered superfluous by the broader language of subdivision (a)(4). Such an interpretation should be avoided. (*Moyer* v. *Workmen's Comp. Appeals Bd.*, *supra*, 10 Cal.3d at p. 230.) Rather, subdivision (a)(3) must be read to exclude all claims that are *payable* as relocation assistance under Government Code section 7262, even if for some other reason such claims will not actually be paid under section 7262.

 ██ ██ The intent of the Legislature is further evidenced by the following comments of the California Law Revision Commission:[6] "The relocation assistance provisions of Government Code Section 7260 *et seq.* should not be made a part of the eminent domain statute. The relocation assistance provisions are applicable to acquisitions of property by public entities by any means, including eminent domain. They provide compensation for losses of a different character than those covered by the eminent domain statute. The Eminent Domain Law is so drafted that it does not duplicate any item of compensation provided by the relocation assistance provisions. Rather, it covers areas not covered by the relocation assistance provisions; in cases of possible overlap, compensation is paid only once." (12 Cal. Law Revision Com. Rep. (1974) pp. 1653-1654.) This statement makes clear that the intent behind section 1263.510 was to exclude coverage for expenses that were already payable under Government Code section 7262.

 As stated by the California Supreme Court, section 1263.510 "was enacted in response to widespread criticism of the injustice wrought by the Legislature's historic refusal to compensate condemnees whose ongoing businesses were diminished in value by a forced relocation." (*People* ex rel. *Dept. of Transportation* v. *Muller*, *supra*, 36 Cal.3d at p. 270.) "The purpose of the statute was unquestionably to provide monetary compensation for the kind of losses which typically occur when an ongoing small business is forced to move and give up the benefits of its former location." (*Ibid.*) However, it is also the purpose of the statute not to cover those losses already covered by the Relocation Assistance Act. Section 1263.510 attempts to compensate for losses for which compensation was not previously made. Reading the two statutory schemes together we conclude that it was the Legislature's intent, to exclude from section 1263.510 expenses compensable under Government Code section 7262.

---

[6]Because section 1263.510 adopts without change the recommendations of the California Law Revision Commission, the commission's report is entitled to great weight in construing the statute and the Legislature's intent. (See *People* v. *Wiley* (1976) 18 Cal.3d 162, 171 [133 Cal.Rptr. 135, 554 P.2d 881].)

Arvey cites *Muller* for the proposition that a statute that " 'is remedial in nature and in the public interest is to be liberally construed to the end of fostering its objectives' " and " ' "wherever the meaning is doubtful, it must be so construed as to extend the remedy." ' " (*People* ex rel. *Dept. of Transportation* v. *Muller, supra,* 36 Cal.3d at p. 269.) In *Muller,* Dr. Muller's goodwill losses would have gone uncompensated had the court not construed the statute's language as it did. *Muller's* directive carries less weight here, however, where the issue is not *whether* the losses will be compensated, but merely *under which* statute the losses will be compensated. Furthermore, we have construed the statute "to the end of fostering its objectives" as required by *Muller.*

Thus, we hold that in section 1263.510, subdivision (a)(3), the phrase "will not be included" means "is not includable." Therefore, subdivision (a)(3) requires Arvey to prove that compensation for the loss is not *includable* in payments under Government Code section 7262, i.e., is a type of loss not covered by section 7262. ■■■■ Our holding is consistent with the trial court's interpretation of section 1263.510, and we find that the trial court properly excluded evidence of expenses payable under Government Code section 7262.[7]

## II

■ Arvey next argues that the trial court improperly instructed the jury on this issue. The trial court excluded evidence of expenses clearly covered by Government Code section 7262 and admitted evidence of a group of expenses (totalling $889,000) that were clearly not covered by section 7262 or were "awfully close." As to this latter group of expenses, Arvey contends that the trial court improperly allowed the jury to determine which expenses were covered by Government Code section 7262 and thus not to be included in the award for lost goodwill. However, Arvey's contention is not supported by the record.

The dispute as to what expenses were compensable under section 1263.510 raged throughout the trial. The trial court allowed Arvey's witness William Gavin (Transo's director of manufacturing) to testify, inter alia, as to Arvey's search for a new business site and, without dollar amounts, to expenses incurred in moving equipment and reinstalling it at the site in

---

[7]Also without merit is Arvey's claim that because it was entitled to recover for all its mitigation expenses regardless of Government Code section 7262, references during the trial to the separate administrative hearing under section 7262 were improper. Such references as were made to the jury were limited in nature and infrequent in number. We cannot conclude that they influenced the jury's award, in light of the express instruction that it not consider the possibility of an administrative award or its amount.

South San Francisco. Over Arvey's objection, the trial court allowed cross-examination as to the fact that such expenses were the subject of an administrative claim (made under Gov. Code, § 7262).

After the trial court ruled admissible evidence of Arvey's expenses (totaling $889,000) that it found were not covered by Government Code section 7262 or were "awfully close," Arvey brought Gavin back to the witness stand. Gavin then gave a precise dollar breakdown of the $889,000: sums spent on severance pay, shutdown costs in Emeryville after the business had moved out, travel and living expenses incurred by employees brought in to help with the move, public relations costs for retaining customers, costs for shutting down and securing the Emeryville plant once it was vacated, fees paid attorneys to negotiate with the unions and fees paid a management consultant.

Arvey contends that the jury instructions called upon the jury to exclude from this group of expenses totaling $889,000 those it found to be covered by Government Code section 7262. The jury was instructed: "You have heard testimony regarding expenses associated with moving defendants' equipment from the Emeryville Transo plant and reinstalling it in the South San Francisco Coast plant or TransCoast plant. You have also heard testimony regarding expenses incurred by defendants in searching for a replacement site from the Emeryville plant. [¶] Such moving and relocation expenses are the subject of a separate administrative proceeding and is not a matter to be determined in this trial. [¶] That separate proceeding considers claims for actual and reasonable expenses in searching for a replacement business, expenses incurred for disconnecting, dismantling, removing, reassembling, reconnecting and re[in]stalling machinery or equipment or other personal properties and any addition, improvement, alteration or other physical change in or to any structure or its premises in connection with the reassembling, reconnection or reinstallation of machinery, equipment or other personal property. [¶] Whether or not the owner will be paid for his relocation expenses, and, if so, how much, has no bearing upon any issue in this case and you must refrain from any inference, speculation, or discussion upon that subject."

The only evidence to which this instruction could reasonably refer was Gavin's initial testimony regarding the search for a new business site and the expenses related to moving and reinstalling the equipment at the site in South San Francisco. The jury was properly instructed to disregard that evidence and whether or not those expenses would be paid in the separate administrative proceeding.

The instruction correctly stated the law. The third paragraph, to which Arvey specifically objects, generally tracks the language of the administrative regulations for Government Code section 7262. (California Relocation

Assistance and Real Property Acquisition Guidelines, Cal. Code Regs., tit. 25, §§ 6090(a)(6) and (b)(1)(A).) That language may have been unnecessary, but was not, in our view, prejudicial to Arvey. We do not read these paragraphs as instructing the jury to decide which of the items in the $889,000 list to exclude. That list was comprised of various expenses, including employee severance, public relations, and security for the final close up of the Emeryville site. None of these expenses could reasonably be considered as relating to moving equipment or searching for a new business site.

Even had the instruction improperly submitted to the jury the legal issue of which expenses among those included in the $889,000 were covered by Government Code section 7262, Arvey has failed to demonstrate actual prejudice. (See *Beasley* v. *Wells Fargo Bank* (1991) 235 Cal.App.3d 1383, 1396-1397 [1 Cal.Rptr.2d 446].) It is probably impossible for Arvey to show such prejudice because the verdict form did not ask the jury to make special findings as to which items of loss were included in its goodwill award. Neither party can do more than speculate as to which of the expenses submitted to the jury were included by it in the $225,000 award.

III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

The judgment is affirmed.

Anderson, P. J., and Reardon, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 14, 1992.

---

*See footnote, *ante*, page 1357.