[No. B185107. Second Dist., Div. Three. July 30, 2007.]

INGLEWOOD REDEVELOPMENT AGENCY, Plaintiff and Appellant, v. ELIAS AKLILU, Defendant and Appellant.

**COUNSEL**

Anita C. Willis, City Attorney, Cal Phil Saunders, Interim City Attorney; Kane Ballmer & Berkman, Royce K. Jones and June Ailin for Plaintiff and Appellant.

Century Law Group, Karen A. Larson and Daniel A. Woodford for Defendant and Appellant.

**OPINION**

**KLEIN, P. J.—**

## SUMMARY

This is an eminent domain case involving the Inglewood Redevelopment Agency (the Agency) and Elias Aklilu doing business as Auto Inn Lube and Oil (Auto Inn). Commencing in 1997, Aklilu operated Auto Inn on the real property at 3300 West Century Boulevard, which he leased from the Nix Family Trust (the Nixes). Auto Inn was profitable in 1998 but lost money each of the succeeding four years. Aklilu attributed this downturn to the construction of the Marketplace at Hollywood Park across the street from Auto Inn. When completed in 2003, the Marketplace at Hollywood Park featured a Home Depot and a Target. Auto Inn returned to profitability and its future looked bright.

In October of 2004, the Agency filed a complaint in condemnation with respect to the property at 3300 West Century Boulevard in furtherance of a redevelopment plan. The Agency was unable to relocate Auto Inn within the redevelopment area. Consequently, Aklilu suffered a total loss of goodwill, which is defined by Code of Civil Procedure, section 1263.510, subdivision (b), as "the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage."[1]

The Agency settled with the Nixes and Aklilu's subtenant who operated a smog inspection shop on the premises. However, the Agency was unable to settle with Aklilu. The Agency's expert took the position Auto Inn had no goodwill at the time of the condemnation because it had never generated excess profits. The Agency offered Aklilu $35,000 for his lost goodwill.

Aklilu's expert, Chris Pedersen, conceded Auto Inn had no goodwill under the excess profit test. However, Pedersen's investigation of Auto Inn revealed it clearly had great potential for increased patronage and profit. Pedersen found the business could have been sold for $410,271, and Pedersen attributed $238,716 of this value to Auto Inn's goodwill. Over the Agency's objection, Pedersen testified that he valued the goodwill based on Aklilu's "cost to create" it. Pedersen found Aklilu reasonably had expended $238,716 to put Auto Inn in the enviable position it enjoyed upon completion of the Marketplace at Hollywood Park.

A jury found Aklilu suffered lost goodwill attributable to the condemnation of the property in the amount of $200,000. The trial court denied Aklilu's motion for litigation expenses (§ 1250.410, subd. (b)) and granted the Agency a setoff against the interest due on the judgment in the amount of the rent Aklilu owed the Agency after the date on which the Agency was entitled to possession of the property (§ 1268.330).

Both sides appealed. The Agency contends the trial court should have excluded Pedersen's testimony on the value of Auto Inn's lost goodwill because the opinion improperly was based on a "cost to create" approach, which no previous case had recognized as an acceptable method of valuing goodwill.

Aklilu contends the trial court erroneously refused to permit Aklilu to litigate the propriety of the resolution of necessity pursuant to which the Agency condemned the property, the trial court abused its discretion in denying his motion for litigation expenses, and the trial court improperly adopted the Agency's proposed final judgment of condemnation.

---

[1] Subsequent unspecified statutory references are to the Code of Civil Procedure.

 We conclude a "cost to create" approach is a permissible means by which to value goodwill under section 1263.510 where, as here, a nascent business has not yet experienced excess profits but clearly has goodwill within the meaning of the statute and experiences a total loss of goodwill due to condemnation of the property on which the business is operated. Consequently, the trial court did not err in admitting Pedersen's testimony. In the balance of the opinion, we reject the contentions raised by Aklilu.

In sum, we affirm the judgment and award Aklilu costs on appeal.

## FACTS AND PROCEDURAL BACKGROUND

1. *The redevelopment plan and the condemnation proceedings.*

In 1981, the City of Inglewood (the City) adopted a redevelopment plan for the Century Redevelopment Project, which merged in 1996 with other redevelopment plans operated by the Agency. The real property at 3300 West Century Boulevard (the property) is located in the Merged Century Redevelopment Project Area. In 1998 the City created the "Village Specific Plan" to revitalize the area previously known as Darby Dixon. The area was blighted and had the highest crime rate in the City.

On June 10, 2003, the city council, sitting as board of directors for the Agency, adopted a resolution of necessity authorizing the condemnation of the property. On October 22, 2003, the Agency filed a complaint in eminent domain against the Nixes, Aklilu and Aklilu's subtenant, Ha Nguyen, who operated VN Smog Test Only on the premises. Nguyen cross-complained against Aklilu for damages based on Aklilu's asserted failure to disclose to Nguyen the impending condemnation proceedings when Nguyen entered into the sublease with Aklilu.

Prior to trial, the Agency settled with the Nixes in the amount of $665,475 for the real property, plus $34,525 for the improvements. The Agency settled with Nguyen in the amount of $35,000 for lost goodwill. As part of this settlement, Aklilu paid Nguyen $2,000 and Nguyen dismissed his cross-complaint against Aklilu and waived discovery sanctions in the amount of $2,281.60, which the trial court had awarded in favor of Nguyen against Aklilu's attorney.

Prior to trial, Aklilu demanded $355,668 consisting of $239,000 for lost goodwill, $31,095 for improvements to the real property, and $85,573 for "moveable equipment." The Agency offered Aklilu $35,000 for lost goodwill.

2. *Trial.*

 a. *Aklilu's testimony.*

Aklilu came to this country in 1974, received a degree in automotive technology in 1976 and worked for two different BMW dealerships from 1976 until 1985 when he opened an automotive repair business in Beverly Hills. In 1997, Aklilu leased the property from the Nixes. Aklilu testified the location was excellent and large retailers were interested in the area. Aklilu thought it would take three to five years for the business to become successful. The lease had an option to renew for five years that included a right of first refusal if the Nixes decided to sell. Aklilu was aware the leased property was in a redevelopment area. However, he was led to believe his business would be relocated in the redevelopment area.

Construction of the Marketplace at Hollywood Park, across the street from Auto Inn, caused disruption of Aklilu's business in 1999 through 2002. The Nixes excused some of Aklilu's lease payments because construction resulted in lack of access to the property and airborne debris. Toward the end of 2002, Aklilu exercised the option to renew the lease at a rent of $2,200 per month.

In 2003, a major portion of the Marketplace at Hollywood Park was completed and traffic flow returned to normal. The development included a Home Depot and a Target. Aklilu testified that, as a result of these improvements, "my location became fantastic, which I was waiting, praying for." Auto Inn became profitable in 2003.

 b. *Aklilu's expert.*

Chris Pedersen, a certified business appraiser and a former business broker who has qualified as a business valuation expert approximately 100 times, became involved in this case when Aklilu was close to eviction and was in the process of trying to relocate his business within the project area. Pedersen's investigation revealed Auto Inn was in "as fine a location as I've ever seen for this type of a business." The business had "outstanding exposure to the street, as well as the [destination] shopping centers across the street." Access and parking were excellent and there was no competition from any similar business. A smaller development might include two businesses similar to Aklilu's. Here, there was only one for the entire development.

Pedersen opined the business had a "very, very promising future" with "lease, location, product, no competition, new area. . . . I don't even think a fluctuation in the economy would have had any impact on it over the next four or five years."

In appraising the value of Auto Inn's goodwill, Pedersen used a "cost to create" approach. Pedersen testified cost frequently is the only provable value for a product or a business. "And that tends to be a minimal value, but it is an identifiable value." When asked about the lack of profits from 1999 through 2002, Pedersen testified the "business is obviously going to do very well and sales and profit had jumped up dramatically when they stopped all the construction. And . . . the business obviously is a good concern."

Pedersen appraised Auto Inn's goodwill based on Aklilu's income tax returns for the years 1998 through 2003. Pedersen made adjustments to these figures to reflect an owner's annual salary of $24,000, plus a 12 percent return on tangible assets, and concluded Auto Inn had adjusted annual losses of $35,000, $37,000, $49,000, $53,000, $52,000 and $12,000 in the years 1998 through 2003, for a total loss of $238,716. By combining the value of the goodwill and the value of the fixtures and equipment ($171,510), Pedersen opined Auto Inn, which consisted of the location and the lease, including the right of first refusal, had a total value of $410,271. Pedersen testified that, within a matter of days, Auto Inn could have been sold for the value Pedersen placed on it. Pedersen believed a prospective buyer would accept a valuation of the business based on the cost Aklilu had expended over the five previous difficult years to place the business in the enviable position it enjoyed upon completion of the Marketplace.

Pedersen did not use the income approach to appraise Auto Inn's goodwill because it was not yet applicable to Aklilu's business and he did not use the market approach because it is rarely used for a small business due to a lack of comparables. Pedersen previously used the "cost to create" approach to value a morphing technology used in the movie The Howling (AVCO Embassy Pictures 1981) and the formula for the Tiger's Milk bar. Pedersen saw no evidence Aklilu acted unreasonably as a businessman.

c. *The Agency's expert.*

Madeleine Mamaux, a chartered financial analyst and business appraiser employed by Desmond, Marcello & Amster, testified goodwill is an intangible asset that manifests itself in the profitability of a business. Mamaux used three methods of valuation to appraise Auto Inn's goodwill, namely, capitalization of the excess operating profit, the discretionary cash flow multiplier method and the revenue multiplier method. Mamaux concluded Auto Inn had no goodwill as of October 22, 2003, under any of the three methods because the business was not profitable. In the capitalization of excess operating profit and discretionary cash flow methods, Mamaux subtracted from profit the fair market rent of the property, which Mamaux referred to as the economic rent, in the amount of $4,898 per month, as

opposed to the $2,200 per month Aklilu actually paid under his lease. Mamaux did this to eliminate the value of Aklilu's advantageous lease from her computation of the goodwill. However, even if Mamaux did not adjust Auto Inn's expenses to reflect economic rent, she still would have concluded the business had no goodwill. Mamaux has never valued goodwill using the "cost to create" approach, which typically is used to value intangible assets like patents and trademarks.

On cross-examination, Mamaux conceded she worked under the supervision of Glenn M. Desmond, the founder of her firm, in two of the three trials at which she had qualified as an expert. Mamaux also conceded there may be "some unusual exceptions" to the rule that goodwill must manifest itself in profits. Finally, Mamaux conceded Auto Inn had the "potential for the acquisition of new patronage" at its Century Boulevard location.

#### d. *Instructions on goodwill.*

The trial court instructed the jury that Aklilu was entitled to just compensation, including the fair market value of the property as of October 22, 2003. The trial court defined "fair market value" as "the highest price for the property that a willing buyer would have paid to a willing seller assuming that, one, there is no pressure on either one to buy or sell; and two, the buyer and seller know all the uses and purposes for which the property is reasonably capable of being used. . . . [¶] . . . In this case Elias Aklilu, dba Auto Inn Lube and Oil, is entitled to compensation for any loss of goodwill as part of just compensation. [¶] Goodwill is the benefit that a person gains as a result of its location, reputation for dependability, skill or quality, and any other circumstance that causes a business to keep old customers or gain new customers."

#### e. *Verdict and allocation of the recovery for fixtures and equipment.*

The jury awarded Aklilu $200,000 for Auto Inn's lost goodwill.

In a separate trial, the trial court apportioned the amount paid by the Agency for fixtures and equipment, $34,525, between Aklilu and the Nixes, awarding Aklilu $4,265 of that amount.

### 3. *Postverdict proceedings.*

Following trial, Aklilu sought litigation expenses under section 1250.410, subdivision (b). The trial court denied the request, finding the Agency's offer was not unreasonable and neither side had negotiated in bad faith.

The Agency submitted a proposed final judgment of condemnation, which provided for interest on the amount the Agency owed Aklilu at the rate earned by the State of California on the Surplus Money Investment Fund. (§ 1268.350, subds. (a), (b).) The proposed final judgment also awarded the Agency an offset against the interest it owed Aklilu in the amount of the rent Aklilu purportedly owed the Agency for the period of time Auto Inn occupied the property after the date of the order of possession. (§ 1268.330, subd. (a).) Auto Inn objected and submitted its own proposed judgment. Without conducting a hearing, the trial court overruled Aklilu's objections and signed the Agency's proposed judgment.

## CONTENTIONS

The Agency contends admission of Pedersen's valuation of Auto Inn's goodwill based on a "cost to create" approach requires reversal.

Aklilu contends there was no substantial evidence to support the resolution of necessity pursuant to which the property was condemned, the trial court erroneously denied Aklilu's motion for litigation expenses and the trial court improperly awarded interest and permitted the Agency a setoff against the interest without conducting a hearing.

## DISCUSSION

1. *Pedersen's valuation of Aklilu's lost goodwill properly admitted.*

 a. *Overview of the Agency's arguments.*

The Agency contends Pedersen's opinion testimony was inadmissible because (1) California law requires goodwill be measured by the present value of anticipated future profits, not past losses (*People ex rel. Dept. of Transportation v. Muller* (1984) 36 Cal.3d 263, 271 [203 Cal.Rptr. 772, 681 P.2d 1340] (*Muller*); (2) Pedersen assumed, rather than proved, the business had goodwill (*City of San Diego v. Sobke* (1998) 65 Cal.App.4th 379, 398–399 [76 Cal.Rptr.2d 9] (*Sobke*); and, (3) Pedersen's approach inappropriately included a reasonable return on tangible assets (*Muller, supra,* at p. 271, fn. 7). The Agency notes Aklilu's business was profitable in only two of the six years of its existence. Thus, the business lacked excess profit and, consequently, lacked goodwill. The Agency argues Pedersen's "cost to create" method of evaluating Auto Inn's goodwill was an example of impermissible speculation about future events that should have been excluded. (*Contra Costa Water Dist. v. Bar-C Properties* (1992) 5 Cal.App.4th 652, 657–658 [7 Cal.Rptr.2d 91]; *San Diego Metropolitan Transit Development Bd. v. Cushman* (1997) 53 Cal.App.4th 918, 930 [62 Cal.Rptr.2d 121].)

Further, because the opinions of the experts in an eminent domain case set the upper and lower limits for the jury's verdict (*San Diego Metropolitan Transit Development Bd. v. Cushman, supra,* 53 Cal.App.4th at p. 931), absent Pedersen's testimony, the Agency would have been entitled to a directed verdict. The Agency concludes this court should reverse the judgment as to loss of goodwill and direct the trial court to enter a verdict consistent with the testimony of the Agency's expert that Auto Inn had no goodwill.

b. *General principles.*

■ Historically, business goodwill was not an element of damages under eminent domain law. However, in 1975, "in response to widespread criticism of the injustice wrought by the Legislature's historic refusal to compensate condemnees whose ongoing businesses were diminished in value by a forced relocation," the Legislature enacted a comprehensive revision of California's eminent domain law. (*Muller, supra,* 36 Cal.3d at p. 270; see *Community Redevelopment Agency v. Abrams* (1975) 15 Cal.3d 813, 817 [126 Cal.Rptr. 473, 543 P.2d 905].) As part of this revision, section 1263.510 authorized compensation for the loss of business goodwill. (*Muller, supra,* at p. 270.)

■ Under section 1263.510, subdivision (a), the business owner has the initial burden of showing entitlement to compensation for lost goodwill. This entails proof the condemnation caused the loss, the loss cannot reasonably be prevented by relocating the business or otherwise mitigating damages, and compensation for the loss will not be included in relocation benefits allowed under the Government Code or otherwise duplicated in the condemnation award. (§ 1263.510, subd. (a).) None of these points is in issue here.

"Once these foundational conditions are proven, the trier of fact must determine the amount of compensation . . . for loss of goodwill, based on whatever evidence is before it." (*People ex rel. Dept. of Transportation v. Salami* (1991) 2 Cal.App.4th 37, 45 [2 Cal.Rptr.2d 833].)

■ Section 1263.510, subdivision (b) defines goodwill as "the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage." (§ 1263.510, subd. (b).)

■ " ' " 'In condemnation proceedings, the trial court is vested with considerable judicial discretion in admitting or rejecting evidence of value.' " ' [Citation.] Where . . . 'an expert in a condemnation action employs a methodology not sanctioned by California law, his opinion may be excluded.' " (*Sobke, supra,* 65 Cal.App.4th at p. 396.)

c. *Resolution.*

██ Our resolution of the question whether Pedersen's testimony properly was admitted is guided by *Muller, supra,* 36 Cal.3d 263, the only Supreme Court case to analyze compensation for business goodwill under section 1263.510. In *Muller,* a veterinarian was forced by condemnation to relocate. In order to avoid losing customers, the doctor relocated a short distance from the previous site of his practice even though the rent there was higher than if he had moved the practice farther away. *Muller* held the doctor could recover the decrease in profits attributable to the higher rent at the new location as lost goodwill. *Muller* observed "[t]he purpose of the statute was unquestionably to provide monetary compensation for the kind of losses which typically occur when an ongoing small business is forced to move and give up the benefits of its former location." (36 Cal.3d at p. 270.)

██ *Muller* found it appropriate to characterize lost profitability caused by increased rent as lost goodwill. *Muller* stated, "Courts have long accepted that goodwill may be measured by the capitalized value of the net income or profits of a business or by some similar method of calculating the present value of anticipated profits. [Citations.]" (*Muller, supra,* 36 Cal.3d at p. 271, fn. omitted.) In a footnote to this statement, *Muller* noted: "Goodwill must, of course, be measured by a method which excludes the value of tangible assets or the normal return on those assets. [Citation.] However, the courts have wisely maintained that there is no single acceptable method of valuing goodwill. [Citation.] Valuation methods will differ with the nature of the business or practice and with the purpose for which the evaluation is conducted. [Citation.] Nothing in this opinion is intended to restrict litigants in eminent domain actions from using other valuation methods than the one employed here." (*Id.* at p. 271, fn. 7.) *Muller* also observed goodwill properly could be valued by "expenses reasonably incurred in an effort to prevent a loss of patronage. [Citation.]" (*Id.* at p. 271.)

██ Further, and of significance to our discussion, *Muller* held the "remedial purpose of the statute . . . is evident" (*Muller, supra,* 36 Cal.3d at p. 270.) Thus, section 1263.510 properly was construed liberally in order to foster its objectives and extend the remedy provided.

Here, Pedersen testified Auto Inn had value in excess of the value attributable to its tangible assets. Indeed, Pedersen testified he had never seen a superior location for an auto lube operation and opined that even a

general business recession would not have diminished Auto Inn's prospects. Pedersen's valuation of Auto Inn's goodwill comports with the statutory definition found in section 1263.510, subdivision (b), which defines goodwill as "the benefits that accrue to a business as a result of its location . . . and any other circumstances resulting in probable . . . acquisition of new patronage." (§ 1263.510, subd. (b).)

■ Pedersen's valuation also satisfied the definition of goodwill found in case law. For example, it has been held that: " 'Goodwill value is a transferable property right which is generally defined as the amount a willing buyer would pay for a going concern above the book value of the assets.' [Citation.]" (*Redevelopment Agency of San Diego v. Attisha* (2005) 128 Cal.App.4th 357, 367 [27 Cal.Rptr.3d 126].)

Pedersen testified a willing buyer would pay $238,716 for Auto Inn's goodwill. The fact Pedersen appraised the value of this goodwill using a "cost to create" approach does not render Pedersen's valuation inadmissible. Rather, admission of Pedersen's testimony was consistent with *Muller's* interpretation of section 1263.510 as "a remedial statute to be construed liberally." (*People ex rel. Dept. of Transportation v. Leslie* (1997) 55 Cal.App.4th 918, 922 [64 Cal.Rptr.2d 252].)

■ Pedersen's method of evaluating Auto Inn's goodwill also finds support in the literature. The "cost to create" approach was endorsed by Glenn M. Desmond, the founder of Mamaux's firm and the co-author of Business Valuation Handbook. The Business Valuation Handbook states that, where the appraiser concludes a business has lost patronage but the value of the goodwill is zero under an excess profits test, a "cost to create" approach is an acceptable means by which to value goodwill.[2]

For all the foregoing reasons, we conclude Pedersen's testimony properly was admitted at trial.

---

[2] Specifically, a chapter entitled, "Valuing goodwill in eminent domain cases," states: "Assume there is no useful market data indicating a set formula or given amount is typically paid for goodwill. Assume further that the excess profit test results in a zero goodwill answer. Since the business is being forced to terminate, there can be no question about the loss of patronage. Here, the appraiser is forced back to the Question and Answer test for goodwill cited [supra]. If he finds goodwill does exist, he may use a cost approach to establish the amount of goodwill loss much as was suggested [previously]. He must hypothesize as to the reasonable costs involved in generating new patronage, assuming the business were to be started again in a similar market area." (Desmond & Kelley, Business Valuation Handbook (1988) p. 220.)

### d. *The Agency's objections do not require a different result.*

The Agency argues Pedersen's valuation method improperly included a return on tangible assets in what he identified as goodwill. The Agency bases this assertion on Pedersen's deposition testimony that, if Auto Inn's tangible assets had a lower value, Pedersen would have made a smaller adjustment for return on tangible assets and Auto Inn would have had less goodwill, rather than more. The Agency concludes Pedersen's valuation thus contravened footnote 7 of *Muller*, which indicated any valuation of goodwill must exclude a return on tangible assets.

However, merely because Pedersen took tangible assets into account in determining the cost to create Auto Inn's goodwill does not mean Pedersen measured the goodwill by a method that included the value of tangible assets or the normal return on those assets. Footnote 7 in *Muller* addressed methods of goodwill valuation that include a return on tangible assets. Clearly, Pedersen based his evaluation of Auto Inn's goodwill on the cost Aklilu expended to create the goodwill, not on a return on tangible assets. Thus, Pedersen's valuation method did not violate footnote 7 of *Muller*.

The Agency also asserts Pedersen assumed, rather than proved, that Auto Inn had goodwill. However, Pedersen's testimony reveals that, at some point in his evaluation of Auto Inn, he reached the conclusion that Auto Inn had goodwill. After he concluded the business had goodwill based on its lease, location and prospects, Pedersen set about determining the value of that goodwill. Pedersen did not, as the Agency asserts, assume goodwill existed.

 The Agency next asserts the book co-authored by Desmond states that if there is no expectation of excess profit, there is probably no marketable goodwill. However, "there may be going concern value expressed and measured in a matter other than excess profit, usually by cost to assemble or unrealized return on investment." (Desmond & Kelley, Business Valuation Handbook, *supra*, at p. 168.) The Agency asserts Pedersen calculated going concern value, not goodwill. However, California law permits recovery for loss of goodwill, not loss of going concern value.

The distinction between going concern value and goodwill is not clear and both refer to intangible assets. Moreover, regardless of how one characterizes it, the intangible asset Pedersen appraised falls within the statutory definition of goodwill, namely, "the benefits that accrue to a business as a result of its location . . . and any other circumstances resulting in probable . . . acquisition

of new patronage." (§ 1263.510, subd. (b).) Thus, the distinction between the two concepts is not an adequate basis upon which to overturn the award in Aklilu's favor.

Finally, *Sobke, supra*, 65 Cal.App.4th 379, the case upon which the Agency places primary reliance, is distinguishable. The defendant in *Sobke* operated Baja-Mex Insurance Services on property near the United States-Mexico border. One of the offices of the business, Baja-Mex No. 4, was forced to move 10 feet. The business sought compensation for lost goodwill even though Baja-Mex No. 4 had increased profit at its new location due primarily to devaluation of the Mexican peso. The trial court excluded the testimony of Baja-Mex's expert, Brian Brinig.

*Sobke* noted, "Brinig never compared the value of goodwill before condemnation with its value after condemnation. . . . Brinig focused only on increased isolated costs after condemnation while disregarding any post-taking revenue increases . . . ." (*Sobke, supra*, 65 Cal.App.4th at p. 397.) *Sobke* concluded: "Although Brinig was not required to use the capitalization of excess earnings method approved in *Muller, supra*, 36 Cal.3d 263, . . . or any other specific methodology in valuing goodwill, nothing in the case law or statutory authority suggests that calculating isolated increased expenses without establishing the existence of actual pretaking goodwill and comparing its value with post-taking goodwill would under any circumstances constitute an appropriate methodology for evaluating loss of goodwill. Hence, on this record the trial court acted within its discretion in excluding Brinig's expert opinion testimony. (Evid. Code, § 803.)" (*Id.* at pp. 398–399.)

We find *Sobke* to be distinguishable in that Baja-Mex No. 4 had increased profit at its new location. Thus, it was questionable whether Baja-Mex No. 4, in fact, had lost goodwill. Consequently, the attempt to value the assertedly lost goodwill based on increased expenses was seen as suspect and creative. (*Sobke, supra*, 65 Cal.App.4th at p. 399.) Here, Aklilu suffered a *total loss* of goodwill. Given that circumstance, and Pedersen's opinion that Aklilu's business clearly had goodwill given its lease, location and prospects, the "cost to create" approach was a permissible method by which to value the lost goodwill in this case.

2. *Aklilu's challenge to the resolution of necessity fails.*

a. *Background.*

On June 10, 2003, the Inglewood City Council, sitting as board of directors for the Agency, adopted a resolution of necessity authorizing the Agency to condemn the property. Mayor Roosevelt F. Dorn presided over the hearing.

Aklilu attended the hearing and spoke in favor of adoption of the resolution of necessity. Councilwoman Judy Dunlap voted against the resolution.

In his first amended answer, Aklilu objected to the resolution of necessity on the grounds the property was not necessary for the redevelopment plan, the proposed project was not planned so as to achieve the greatest public good and the least private injury, and the Agency failed to relocate Auto Inn within the redevelopment in violation of its own rules for owner participation. Aklilu subpoenaed Mayor Dorn and Councilwoman Dunlap. However, the trial court quashed the subpoenas.

Before trial commenced, the trial court found Aklilu lacked standing to attack the resolution of necessity because he failed to object to the resolution at the hearing. The trial court further found there was substantial evidence supporting the resolution of necessity and the Agency's failure to relocate Auto Inn in the redevelopment did not defeat the resolution of necessity, even if Auto Inn was excluded from the redevelopment in violation of the City's rules on owner participation.

b. *Aklilu's contentions.*

Aklilu contends the City acted arbitrarily in adopting the resolution of necessity, thereby indicating a gross abuse of discretion that eliminates the presumption in favor of the validity of the resolution of necessity. (*Redevelopment Agency v. Norm's Slauson* (1985) 173 Cal.App.3d 1121, 1127 [219 Cal.Rptr. 365] (*Norm's Slauson*).) Aklilu contends the Agency entered into an exclusive contract in 2002 with Alexander Haagen to develop the site with the City's assistance. Aklilu asserts the board rubberstamped a preordained decision, failed to engage in a meaningful discussion and misled Aklilu into thinking he would participate in the redevelopment, resulting in a gross abuse of discretion. Aklilu argues Councilwoman Dunlap's dissenting vote spoke to the board's failure to exercise any discretion at all.

Aklilu contends the trial court improperly quashed the subpoenas he served on Mayor Dorn and Councilwoman Dunlap and approved the actions of the City without permitting Aklilu to present evidence beyond the administrative record.

Aklilu further claims the removal of blight under Health and Safety Code section 33031 is an insufficient basis for the adoption of the resolution and

the Agency failed to show the development of the blighted area could not be accomplished privately. Aklilu argues the Agency failed to rebut his claim the project constituted a naked transfer of property from one private owner to another, the Agency failed to show the private benefit to the developer was incidental to the public benefit and the Agency failed to show the taking was necessary to the project.

Aklilu next contends the Agency failed to comply with the provisions of the Health & Safety Code that require the City to provide for owner participation in a redevelopment.[3] Although the City drafted rules for owner participation, Aklilu claims neither the City nor the Agency made a good faith effort to implement the rules and Aklilu was not provided preference in the project area.

Aklilu asserts he spoke in favor of the project at the hearing on the resolution of necessity based on his belief the Agency would relocate Auto Inn in the redevelopment project. Aklilu previously had discussed this issue with several city agents including an employee of the acquisition department. Aklilu notes Mr. Rhoad, the Agency's relocation consultant, testified at his deposition the Agency did not provide him a copy of the rules or discuss his responsibility to implement them.

c. *General principles.*

██ A resolution of necessity is a prerequisite to the filing of a complaint in eminent domain. (§§ 1240.040, 1245.220.) Adoption of a resolution of necessity is a quasi-legislative decision. (*Anaheim Redevelopment Agency v. Dusek* (1987) 193 Cal.App.3d 249, 260 [239 Cal.Rptr. 319].) Unless adoption of the resolution of necessity was influenced by gross abuse of discretion of the governing body, it conclusively establishes the matters set forth in section 1240.030 including: (a) public interest and necessity require the project; (b) the project's compatibility with the public good and the least public injury;and, (c) the property sought to be acquired is necessary for the project.

---

[3] Health and Safety Code section 33339 provides: "Every redevelopment plan shall provide for participation in the redevelopment of property in the project area by the owners of all or part of such property if the owners agree to participate in the redevelopment in conformity with the redevelopment plan adopted by the legislative body for the area."

Health and Safety Code section 33339.5 provides: "Every redevelopment agency shall extend reasonable preference to persons who are engaged in business in the project area to reenter in business within the redeveloped area if they otherwise meet the requirements prescribed by the redevelopment plan. [¶] With respect to each redevelopment project, each agency shall, within a reasonable time before its approval of the redevelopment plan adopt and make available for public inspection rules to implement the operation of this section in connection with the plan."

(*Santa Cruz County Redevelopment Agency v. Izant* (1995) 37 Cal.App.4th 141, 149 [43 Cal.Rptr.2d 366]; *Norm's Slauson, supra,* 173 Cal.App.3d at p. 1129.)

 A person having an interest in property described in a resolution of necessity may obtain judicial review of the validity of the resolution *before* the eminent domain action via a writ of mandate pursuant to section 1085 or *after* the commencement of the eminent domain proceeding by objection to the right to take. (*Redevelopment Agency v. Rados Bros.* (2001) 95 Cal.App.4th 309, 316 [115 Cal.Rptr.2d 234]; *Santa Cruz County Redevelopment Agency v. Izant, supra,* 37 Cal.App.4th at p. 149; *Anaheim Redevelopment Agency v. Dusek, supra,* 193 Cal.App.3d at p. 255.)

A challenge to a resolution of necessity raised as a defense in an eminent domain action is reviewed under the same standard as a challenge by way of a writ of mandate. In either case, the trial court applies a section 1085 deferential standard of review. (*Redevelopment Agency v. Rados Bros., supra,* 95 Cal.App.4th at p. 316; *Burbank-Glendale-Pasadena Airport Authority v. Hensler* (1991) 233 Cal.App.3d 577, 589 [264 Cal.Rptr. 498]; *Anaheim Redevelopment Agency v. Dusek, supra,* 193 Cal.App.3d at p. 258; § 1245.255, subd. (b).) On appeal, we determine whether the findings and judgment of the trial court are supported by substantial evidence but independently review questions of law where the facts are undisputed. (*Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1217 [85 Cal.Rptr.2d 660]; *Saathoff v. City of San Diego* (1995) 35 Cal.App.4th 697, 700 [41 Cal.Rptr.2d 352].)

### d. *Resolution.*

Initially, as the trial court observed, Aklilu appeared at the hearing on the resolution of necessity and failed to object to its adoption. Consequently, he has waived the objections to the resolution of necessity that he now seeks to raise. (*People ex rel. Dept. of Transportation v. Cole* (1992) 7 Cal.App.4th 1281, 1285–1286 [9 Cal.Rptr.2d 750].)

 Aklilu objects that he spoke in support of the resolution of necessity only because the Agency convinced him Auto Inn would be relocated within the redevelopment. Aklilu asserts the Agency failed to comply with the City's rules for owner participation in the redevelopment. However, the Agency concedes Aklilu suffered a complete loss of goodwill in this case. Thus, the Agency's compliance with owner participation rules is not an issue in this appeal. In any event, compliance with the rules for owner participation in a

redevelopment is not a prerequisite to adoption of a resolution of necessity. Although the two concepts may be related in a given case (see *Redevelopment Agency v. Arvey Corp.* (1992) 3 Cal.App.4th 1357, 1361 [5 Cal.Rptr.2d 161]), they are independent of each other. Thus, the failure of the Agency to comply with the rules on relocation does not provide a basis upon which to set aside the resolution of necessity in the first instance.

With respect to Aklilu's attack on the Agency's finding the area was blighted and it was not reasonably likely that private enterprise, acting alone, would alleviate the blight, these findings were not made at the time the resolution of necessity was adopted but were made at the time the redevelopment plan was adopted. In this case, the City adopted the redevelopment plan in 1981 and merged the plan in 1996 with other plans operated by the Agency. Aklilu had 60 days following adoption of the redevelopment plan to challenge the designation of blighted areas. (*Anaheim Redevelopment Agency v. Dusek, supra*, 193 Cal.App.3d at p. 264; *Redevelopment Agency v. Del-Camp Investments, Inc.* (1974) 38 Cal.App.3d 836, 840–841 [113 Cal.Rptr. 762].) However, Aklilu did not raise the challenge in this case until he filed a first amended answer in 2004. Thus, Aklilu's objection to the adoption of the redevelopment plan fell far outside the 60-day time limit and consequently was time-barred.[4]

With respect to Aklilu's claim the hearing on the adoption of the resolution of necessity was a sham because the City entered into a binding agreement with a developer before the hearing on the resolution, Aklilu relies upon *Norm's Slauson, supra*, 173 Cal.App.3d 1121. In *Norm's Slauson* a redevelopment agency contracted with a developer and issued revenue bonds to finance a project *before* holding any hearings on public necessity. Thus, the agency had "irrevocably committed itself to take the property in question, regardless of any evidence that might be presented at that hearing." (*Norm's Slauson, supra*, at p. 1127.)

However, *Norm's Slauson* clearly is distinguishable. There is no evidence in the record to suggest the Agency had a binding agreement with a developer prior to the adoption of the resolution of necessity. There are references in the administrative record of the hearing on the resolution of necessity that describe the developer's ongoing efforts to determine the feasibility of the development. However, at the time of the hearing, the City had only an exclusive negotiating agreement with the developer. The Agency did not enter into a development agreement until June of 2004, when the Agency accepted Alexander Haagen's plan to develop 16.07 acres of the Merged Inglewood

---

[4] Health and Safety Code section 33500 was amended in 2006 to provide for a 90-day statute of limitations for actions brought to review the validity of the adoption or amendment of a redevelopment plan. (Stats. 2006, ch. 595.)

Redevelopment Project, including the property at issue in this case. Accordingly, *Norm's Slauson* has no application here.

■ Aklilu next claims the trial court erred in quashing the subpoenas Aklilu served on Mayor Dorn and Councilwoman Dunlap. However, the trial court must resolve a challenge to the resolution of necessity based on the administrative record. No additional evidence may be admitted. (*Santa Cruz County Redevelopment Agency v. Izant, supra,* 37 Cal.App.4th at p. 150.) Thus, the trial court properly quashed the subpoenas.

In sum, Aklilu's attacks on the resolution of necessity uniformly fail.

> 3. *No abuse of discretion in the denial of Aklilu's request for litigation expenses.*
>
> a. *Background.*

Following the jury verdict in his favor, Aklilu sought litigation expenses under section 1250.410, subdivision (b) which provides: "If the court . . . finds that the [pretrial] offer of the plaintiff was unreasonable and that the [pretrial] demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed . . . shall include the defendant's litigation expenses."

The trial court found Aklilu's demand in this case was $355,668 consisting of $239,000 for lost goodwill, $31,095 for improvements to the real property, and $85,573 for "moveable equipment." The trial court found the Agency had offered the Nixes and Aklilu a total of $665,475 for the real property, $34,525 for the improvements and $35,000 for goodwill. The trial court concluded the award of $204,265 in favor of Aklilu was substantially different from either the offer or the demand.

After a contentious hearing, the trial court found the Agency's offer of $35,000 for goodwill was not unreasonable because the Agency properly had discounted Pedersen's appraisal given that "there was absolutely no case . . . that supports the position [Pedersen took] in this case." The trial court also found the Agency reasonably had doubted whether Aklilu's business was properly licensed.[5] The trial court noted the photographs of Auto Inn offered into evidence at trial suggested Aklilu was performing automotive repairs without a license.

---

[5] The trial court ruled prior to trial that Auto Inn's licensing status was an administrative matter that was not relevant to Aklilu's entitlement to compensation for goodwill. The Agency thereafter withdrew its challenge to Aklilu's entitlement to compensation. Nonetheless, on cross-examination by the Agency's counsel, Aklilu testified he discussed his license situation with a state inspector and was informed he did not need an auto repair license. Aklilu indicated he operated under the auto lube exception. However, Aklilu conceded he performed some

The trial court ruled that, based on all the circumstances of this case, the Agency's offer was not unreasonable and neither side had negotiated in bad faith.

### b. *General principles.*

Section 1250.410 awards all litigation expenses, including attorney fees and expert witness fees, to a condemnee who is unnecessarily compelled to litigate due to the condemnor's intransigence. (*Emeryville Redevelopment Agency v. Harcros Pigments, Inc.* (2002) 101 Cal.App.4th 1083, 1107 [125 Cal.Rptr.2d 12].) The purpose of section 1250.410 is to encourage settlement of eminent domain cases. (*Santa Clara Valley Water Dist. v. Gross* (1988) 200 Cal.App.3d 1363, 1368 [246 Cal.Rptr. 580].) To effectuate this purpose, section 1250.410, subdivision (a) directs the parties to an action in eminent domain to file with the trial court a final offer or demand at least 30 days prior to trial. Section 1250.410, subdivision (b) permits the trial court to award the defendant litigation expenses if it finds "the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding . . . ." (§ 1250.410, subd. (b).) The statute requires the trial court to find "*both* that the owner's demand was reasonable *and* that the agency's offer was unreasonable." (*Santa Clara Valley Water Dist. v. Gross, supra*, 200 Cal.App.3d at p. 1368.) The reasonableness of the demand and offer "are factual issues to be evaluated by the trial court, and its determination of reasonableness or unreasonableness must be upheld on appeal if supported by substantial evidence. [Citation.]" (*Community Redevelopment Agency v. Krause* (1984) 162 Cal.App.3d 860, 866 [209 Cal.Rptr. 1].)

### c. *Aklilu's contentions.*

Aklilu contends the trial court impermissibly reconsidered its ruling to admit Pedersen's testimony in the context of the motion for litigation expenses. Also, the Agency should not be heard to complain about Pedersen's valuation method when the founder of the Mamaux's firm, Desmond, has recommended use of a "cost to create" approach in situations like the one presented here.

Aklilu further contends the trial court improperly compared Aklilu's total demand to the jury's award when, in fact, only the amount of goodwill was in issue at trial. Thus, the trial court should have compared Aklilu's demand for goodwill in the amount of $239,000 to the jury's award of $200,000. Aklilu notes the award exceeded the offer by 570 percent and constituted 83 percent

---

automotive repairs at the shop in order to keep his customers happy. Aklilu had a smog license related to Nguyen's operation of a smog station on the premises.

of Aklilu's demand. "A survey of cases indicates that final offers which are 60 percent or less of the jury's verdict are found to be unreasonable while offers which are above 85 percent have been considered reasonable per se." (*People ex rel. Dept. of Transportation v. Yuki* (1995) 31 Cal.App.4th 1754, 1764 [37 Cal.Rptr.2d 616].) Aklilu argues a trial court cannot ignore the significance of the numbers in light of the compensation awarded and what they reveal as to the negotiating postures of parties.

Aklilu notes the Agency settled with Aklilu's subtenant, Nguyen, in the amount of $35,000 even though the Agency claimed Nguyen's sublease was illegal and it expired prior to the effective date of the condemnation. Nonetheless, the Agency offered Aklilu the same amount it offered Nguyen.

Aklilu argues the Agency did not act diligently in that it waited until the mandatory settlement conference before it asserted, for the first time, that Aklilu was not entitled to compensation because he lacked an auto repair license. Aklilu claims the Agency raised this issue without any investigation or verification from state inspectors. Further, neither the Agency nor its expert was aware of the statutory exemption for lube shops.

Aklilu asserts this court must rule de novo on the motion for litigation expenses because the trial court failed to decide the motion under the standard set forth in section 1250.410, subdivision (b). (*Emeryville Redevelopment Agency v. Harcros Pigments, Inc., supra*, 101 Cal.App.4th at p. 1095.) However, even under a substantial evidence standard, the trial court's ruling was incorrect in that there was substantial evidence the Agency's offer was unreasonable. Aklilu concludes the trial court's refusal to award litigation expenses was error.

### d. *Resolution.*

Turning first to Aklilu's assertion the trial court should have considered only Aklilu's demand for goodwill and not the entirety of Aklilu's demand, we find no impropriety. In assessing the reasonableness of Aklilu's demand, the trial court properly could consider the reasonableness of all aspects of the bargaining posture Aklilu assumed prior to trial. Aklilu demanded $355,668 consisting of $239,000 in lost goodwill, $31,095 in fixtures and equipment and $85,573 in moveable equipment. However, Aklilu was not entitled to compensation for "movable" equipment. (*Redevelopment Agency of San Diego v. Attisha, supra*, 128 Cal.App.4th at p. 378; *Chhour v. Community Redevelopment Agency* (1996) 46 Cal.App.4th 273, 283 [53 Cal.Rptr.2d 585].) Further, although Aklilu demanded approximately 90 percent of the amount of the Agency's appraisal for fixtures and equipment, based on Aklilu's testimony at the court trial to apportion the

compensation for fixtures, it appears Aklilu was aware the Nixes owned most of the fixtures and equipment on the property. Thus, both of these demands were unreasonable.

Moreover, even if we focus solely on the $35,000 offer and the $239,000 demand for lost goodwill, the trial court's denial of Aklilu's request for litigation expenses is supported by substantial evidence. We reach this conclusion because the trial court properly could find the Agency's offer of $35,000 for Auto Inn's lost goodwill was reasonable in that the Agency's appraiser concluded Auto Inn had *no* goodwill.

The fact the Agency paid Aklilu's subtenant, Nguyen, the same amount for lost goodwill that it offered Aklilu does not reveal the offer to Aklilu to have been unreasonable. As the trial court noted, the settlement disposed of Nguyen's claim, including his cross-complaint against Aklilu, which alleged Aklilu knew of the impending condemnation but failed to disclose this information to Nguyen. As part of the settlement, Aklilu paid Nguyen $2,000 and Nguyen dismissed its complaint against Aklilu and waived discovery sanctions in the amount of $2,281.60, which the trial court had awarded in favor of Nguyen against Aklilu's attorney. Because the Agency's payment of $35,000 to Nguyen relieved Aklilu of Nguyen's cross-complaint, the trial court reasonably could conclude the Agency, in effect, had offered $70,000 for Aklilu's loss of goodwill.

Finally, the trial court's misgivings about the admissibility of Pedersen's testimony reveal the question whether to permit the jury to hear Pedersen's testimony was a close one. Indeed, as the trial court noted, no prior case had expressly approved the "cost to create" approach used by Pedersen here.

■ In sum, we cannot say the trial court's denial of Aklilu's motion for litigation expenses was unsupported by substantial evidence. Indeed, "the mathematical relation between the condemner's highest offer and the award is only one factor that should enter into the trial court's determination. [Citations.]" (*Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694, 720 [66 Cal.Rptr.2d 630, 941 P.2d 809]; *Glendale v. Parks* (1993) 18 Cal.App.4th 1409, 1416 [23 Cal.Rptr.2d 14].) Equally important is the " ' "good faith, care and accuracy in how the amount of offer and the amount of demand, respectively, were determined." ' " (*Los Angeles County Metropolitan Transportation*

*Authority v. Continental Development Corp., supra,* at p. 720.) Taking all the relevant factors into consideration, we affirm the trial court's denial of Aklilu's request for litigation expenses.

### 4. *Issues related to the final judgment of condemnation.*

#### a. *Background.*

The Agency submitted a proposed final judgment of condemnation which provided for interest on the amount the Agency owed Aklilu at the rate of 1.59 percent from the date of the order for possession through June 30, 2004, 1.454 percent from July 1, 2004, through December 31, 2004, and of 1.83 percent from January 1, 2005. The proposed final judgment also provided for an offset against the interest the Agency owed Aklilu in the amount of the value of Aklilu's holdover possession after the Agency obtained an order of possession but before Auto Inn was evicted from the premises. The Agency's proposed judgment valued the offset at the rent Aklilu paid under his lease with the Nixes, $83.33 per day, from March 15, 2004, until September 29, 2004, or 199 days, for a total of $16,582.67.

Aklilu objected to the offset against the interest and submitted his own proposed judgment. Without conducting a hearing, the trial court overruled Aklilu's objections and signed the Agency's proposed final judgment.

#### b. *The interest rate.*

Aklilu contends the interest rate proposed by the Agency should have been the starting point for the determination of the applicable interest rate. (*Customer Co. v. City of Sacramento* (1995) 10 Cal.4th 368, 390–391 [41 Cal.Rptr.2d 658, 895 P.2d 900]; *Redevelopment Agency v. Gilmore* (1985) 38 Cal.3d 790, 797 [214 Cal.Rptr. 904, 700 P.2d 794].) Aklilu asserts the experts in this case testified the prevailing market interest rates for like investments varied from 7 percent (Pedersen) to 30 percent (Mamaux). Given that the jury rejected Mamaux's testimony, Aklilu requests this court adopt the interest rate of 7 percent that Pedersen testified was appropriate.

 The rate of interest generally applicable to judgments does not apply in an eminent domain case. Rather, the interest awarded on judgments in eminent domain cases is tied to the rate of interest earned by the State of California on its Surplus Money Investment Fund. (§ 1268.350, subd. (a).) The range of the rates of return to be expected upon investment of tangible

assets mentioned in testimony at trial is not relevant to this discussion. Consequently, the trial court properly awarded Aklilu interest at the rate earned by the state on the Surplus Money Investment Fund.

c. *The offset against the interest.*

Aklilu contends the trial court should have disallowed the Agency's requested offset against the interest because the Agency gave no prior notice of its claim for an offset (§ 1260.040) and did not request a hearing on the offset. Further, the only evidence offered in support of the offset was the declaration of the Agency's counsel. Aklilu complains the rent used in the context of a setoff must reflect the tentative nature of occupying land subject to condemnation. Further, the Agency is charged with proving the value of the defendant's hold over tenancy. (*City of Stockton v. Albert Brocchini Farms, Inc.* (2001) 92 Cal.App.4th 193, 202–203 [111 Cal.Rptr.2d 662].) Aklilu asserts the only reasonable short-term use of the premises would be as a storage facility. Aklilu had no opportunity to present evidence of that value or argue that he was entitled to an offset against the holdover rent based on the Agency's interference with Aklilu's enjoyment of the leasehold.

Aklilu's contentions with respect to the offset are not persuasive. Section 1268.330 provides that if the condemnee continues in actual possession after interest begins to accrue, "the value of that possession shall be offset against the interest." Thus, as a matter of law, the Agency was entitled to an offset against the interest due on the judgment in the amount of the rent applicable to the period of time Aklilu remained in possession after the effective date of the order for possession. No hearing was required because the offset was mandatory and the trial court already had received evidence related to the fair market rent of the property. (See *People ex rel. Dept. Pub. Wks. v. McCoy* (1967) 248 Cal.App.2d 27, 30–31 [56 Cal.Rptr. 352].) In this regard, Pedersen testified the fair market rent was the amount Aklilu was paying under the lease extension he entered into in 2002. The Agency adopted this view of the fair market rent when it calculated the offset. Consequently, the offset was in the same amount Aklilu would have paid as rent under the lease during the holdover period.

Regarding the failure of the trial court to hold a hearing, Aklilu's declaration in opposition to the Agency's proposed final judgment did not suggest the fair market rent should be less than the rent Aklilu had been paying. Thus, there was no factual dispute presented to the trial court that required a hearing. Accordingly, the trial court committed no error in resolving the issues presented relative to the final judgment in condemnation based on the evidence presented at trial, as supplemented by the declarations of the parties.

## DISPOSITION

The judgment is affirmed. Aklilu is awarded costs on appeal.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied August 20, 2007, and the opinion was modified to read as printed above.